No. 17,245.

CONSTITUTION LIFE INSURANCE COMPANY *v.* ROGERSON ET AL.

(273 P. [2d] 1019)

Decided July 19, 1954.

Mr. R. HICKMAN WALKER, for plaintiff in error.

Mr. ALBERT P. FISCHER, Mr. WARD H. FISCHER, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will hereinafter refer to the parties as they appeared in the trial court, where plaintiff in error was defendant and defendants in error were plaintiffs. Plaintiffs are husband and wife.

The action was instituted in the district court of Jackson county to recover the amount of premiums paid by plaintiffs on their applications for the issuance by defendant company of two policies of life insurance. The second amended complaint consisted of four separate counts, the first of which was based upon alleged false representations made by the agents of defendant company in procuring plaintiffs' applications for the insurance policies and the payment of the annual premiums in connection therewith; in the second count it was alleged in substance that the insurance policy issued by defendant company on the life of Robert B. Rogerson was not issued in accordance with the application; in the third count it was alleged in substance that the policy

issued on the life of Bonnie Lee Rogerson was not issued in accordance with the application; and the fourth count appears to be based on a combination of the elements set forth in the other counts.

At the conclusion of all the evidence the trial court dismissed the first and fourth counts of the complaint on the ground that there was no evidence tending to establish the allegations thereof, and it then directed the jury to return verdicts in favor of plaintiffs on the second and third counts. In reaching the conclusion that directed verdicts were warranted, the trial court said, inter alia: "The plaintiffs made an application for some insurance with the defendant Company, they by issuing certain policies made a counter offer, the counter offer has not been accepted. In my opinion, the evidence is very definite that upon the second and third claims that the insurance policies issued are counter offers by the insurance company that have not been accepted and there has not been a meeting of the minds and there has not been a contract consummated between these parties, and therefore, I feel that the motion for a directed verdict on behalf of plaintiffs upon the Second and Third Claims is good."

In connection with the application for insurance on the life of the husband, an annual premium in the sum of $1,767.60 was paid, and the premium paid on the application for insurance on the life of the wife was $1,099.20. In the judgment of the trial court, it ordered the return, by the insurance company, of these amounts together with interest. Defendant company, seeking reversal of that judgment, brings the case here for review by writ of error.

Since no review is sought with reference to the action of the trial court in dismissing the first and fourth counts of the complaint, we do not consider the substantial portions of the record which involved the question as to whether there was competent evidence of fraud by

agents of the company in securing the applications for insurance and the payment of the annual premiums thereon. We concern ourselves solely with the evidence tending to establish the alleged variations between the policies, as issued by defendant, and the applications for the issuance thereof.

In brief, plaintiffs' position is that, agents authorized by defendant to sell insurance sold them the idea of an estate tax program which involved the purchase of $20,-000.00 in life insurance by each of them. Through this program, which included some legal services to have been performed, without expense to plaintiffs, by attorneys selected by the life insurance salesmen, Mr. and Mrs. Rogerson expected to reduce their liability for the payment of estate taxes upon the death of either of them. An essential part of this estate tax reduction plan was that the husband should apply for insurance upon the life of the wife; that he should pay the premium from his own funds; and that he should be the absolute owner thereof, with no interest whatever in the policy to be held by the wife. With reference to the policy issued upon the life of the husband the reverse situation was to apply.

Counsel for plaintiffs contended upon the trial, and contend here, that they "signed applications for the insurance which was their offer to purchase the insurance on the terms and conditions contained in the applications. The company changed the applications, issued policies different from the applications, and raised the premium rate on one policy. That was in effect a counter offer by the company. The policies, or rather the counter offers, were refused. As the company refused to return the premiums, they are indebted to the Rogersons for the amount of premiums paid."

Under the provisions of the application for insurance on the life of the husband an annual premium of $1,-767.60 was required; whereas that required by the policy as issued was $1,808.60. In addition to this variance in

the amount of annual premium, it is contended by counsel for plaintiffs that the applications were for the issuance of "Commercial Whole Life" policies, whereas those issued by the company were "Whole Life" policies.

With reference to the policy on the life of the husband, it is argued that the paragraph contained therein conferring exclusive ownership thereof upon the wife, was not within the contemplation of the parties, in that the application for said insurance included no such provision, and that there was, therefore, a variance between the application and the tendered policy. The same contention in reverse is made with reference to the policy issued on the life of the wife.

Each of the applications contained, inter alia, the following provisions:

"2. That no statements, promises, or information made or given by or to the person soliciting or taking this application for a policy, or by or to any person shall be binding on the Company or shall in any manner affect its rights or requirements, unless such statements, promises, or information be reduced to writing, presented with this application, and approved by an authorized officer of the Company at its Home Office. Notice to or knowledge of the soliciting agent or the Medical Examiner is not notice to or knowledge of the Company.

"3. That this application * * * and any policy issued in consideration hereof, shall constitute the entire contract between the parties hereto."

It is clear that at the time the applications for insurance were made, Mr. and Mrs. Rogerson signed an instrument which read as follows:

"I, Bonnie Lee Rogerson, as the Applicant, hereby apply for the insurance requested under Application Date Oct. 26, 1951, to Constitution Life Insurance Company, on the life of Robert Bailey Rogerson and declare that the statements made in Part One and Part Two of said Application are full, complete and true to the best

of my knowledge and belief and I agree that the said statements shall be the basis of the policy applied for.

Bonnie Lee Rogerson
Signature of Applicant

"S. M. Oberg
Witness

"I hereby consent to the issue of the insurance applied for on my life under Application Date Oct. 26, 1951, and I declare that all the statements made in Part One and Part Two of said Application are full, complete and true to the best of my knowledge and belief. *I agree that the above Applicant shall be the absolute owner of the policy applied for and declare that I have no interest therein.* (Emphasis supplied)

Robert Bailey Rogerson
Signature of Person to Be Insured."

"S. M. Oberg
Witness"

The identical statement, except that the names of the parties were reversed, was signed in connection with the application for insurance on the life of Mrs. Rogerson.

Section 19 (9), chapter 87, '35 C.S.A., provides in part as follows: "No statement or declaration made to or by an agent, examiner or other person, not contained in the application shall be taken or considered as having been made to or brought to the notice or knowledge of the company, or as charging it with any liability by reason thereof."

Counsel for defendant company attempted to explain the variance in the annual premium fixed by the policy issued on the life of Mr. Rogerson, by evidence of the agent who took the application. This evidence was to the effect that, prior to the signing of the application plaintiffs were informed by the agent that he did not have in his possession at that time the information necessary to accurately compute the premium on a policy in which the insured was sixty-seven years old (which was Mr. Rogerson's age), and that the figure set

forth in the application as prepared might be changed in the home office of the company. The agent, Mr. Oberg, testified that it was orally agreed that the home office might increase or decrease the annual premium to be paid, and that the matter would be adjusted between them. This testimony was denied by Mr. Rogerson. Counsel for defendant company contends that this issue of fact was material; that the evidence offered on either side was competent; that it was introduced without objection; and that the jury should have determined the issue under proper instructions.

### Questions to be Determined.

■ First: *Where a person signs an application for life insurance and tenders a year's premium in an amount fixed by the company's agent; where said application contains a statement that it and the policy thereafter to be issued shall constitute the entire agreement between the parties; and where the application contains a provision exempting the company from liability upon any parol agreements; can the company increase the annual premium above the amount originally fixed and justify such increase by an alleged parol agreement between the insured and the agent, that the home office should have the right to change the amount of the premium?*

This question is answered in the negative. Under the stipulations contained in the printed form of application for insurance it is clear that the insurance company did not accept the offer of the applicant to purchase insurance on the terms and conditions stated in the written application. The trial court was correct in holding that the policy issued upon the life of Mr. Rogerson was not an acceptance of any offer which he had made, but was, in effect, a new offer to insure his life on terms at variance with those contained in his application. Mr. Rogerson refused to accept the offer of the company and was entitled to a refund of the premium originally paid, to-

gether with interest thereon from the time he made demand therefor.

■ Second: *Where, in an application for the issuance of a policy for life insurance, the policy to be issued was described as a "Commercial Whole Life" contract, and the policy issued bore the identification of a "Whole Life" contract, in the absence of any evidence that there was a difference between the two expressions as applied to contracts of insurance, is there such a variance between the application and the policy issued thereon as to warrant refusal by applicant to accept the policy and justified his demand for a refund of premium?*

This question is answered in the negative. The "Commercial Whole Life" policy specified in the application, so far as the evidence shows, may have been identical with the "Whole Life" policies delivered. The burden was upon plaintiffs, who were seeking to recover moneys voluntarily paid by them, to show what, if any, difference was indicated by these two phrases. This burden they did not assume and the alleged variance is wholly insufficient to warrant a refusal to accept the "Whole Life" policy.

■ Third: *Did the trial court err in holding that there was a variance between the applications for insurance and the policies issued, in connection with the provision relating to the ownership of all rights under the policies?*

This question is answered in the affirmative. Although the reference to ownership of the policies is not included within the printed form of application, it is clear that each of the parties by separately signed instruments gave express consent that the applicant (who was the spouse of the insured in each case) "shall be the absolute owner of the policy applied for," and that the insured would have "no interest therein."

It is abundantly established that the ownership clause contained in the policies delivered by the company was the important part of the contract, in so far as the ob-

jective sought to be accomplished by the Rogersons was concerned. The purchase of the insurance policies was intended to be the tax saving element in the program suggested by the insurance agents. It is admitted by counsel for plaintiffs that if that result was to be obtained Robert Rogerson would have to be the exclusive owner of the policy on the life of his wife, and she must have been the exclusive owner of the policy issued upon his life. The provision contained in the policies, bearing upon this question, was not at variance with the written statement forwarded to the company with the applications.

Except for the increase in the amount of the premium payable on the policy issued upon the life of Robert B. Rogerson, we find no variance between the applications and the policies sufficient to warrant a demand for a refund of the premiums paid. Accordingly that portion of the judgment directing a refund of $1,767.60 with interest, as prayed for in the second count of the complaint, is affirmed. The judgment on the third count, directing a refund of $1,099.20 with interest, as prayed for in the third count of the complaint, is reversed with direction to dismiss the same.

Under the circumstances of this cause we deem it proper that all costs be divided equally between plaintiffs and defendant, and it is so ordered.