No. 17,819.

LINCOLN LIBERTY LIFE INSURANCE COMPANY *v.*
BEN SAM MARTINEZ AND ISABEL MARTINEZ.
(299 P. [2d] 507)

Decided July 16, 1956.   Rehearing denied August 6, 1956.

Messrs. DAWSON, NAGEL, SHERMAN & HOWARD, Mr.

ARTHUR K. UNDERWOOD, JR., Mr. RAYMOND J. TURNER, for plaintiff in error.

Messrs. STINEMEYER & STINEMEYER, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

DEFENDANTS in error, parents of Orlando Martinez, were plaintiffs in the trial court in an action against plaintiff in error, and had judgment in the sum of $5,000 based on a death claim made under a life insurance policy allegedly issued on the life of their son Orlando. From the judgment plaintiff in error, herein referred to as the Company, brings the case here on writ of error.

Joined with the parents of Orlando as plaintiffs in the amended complaint, was the administrator of the estate of Orlando Martinez, deceased. In the trial court the claim of the administrator was dismissed and no cross-error is assigned on this ruling.

The complaint alleged, and the evidence disclosed, that about December 8, 1953, Orlando, then nineteen years of age, signed an application for a $5,000 double indemnity life insurance policy, at the same time submitting a non-medical application for this policy thru the local agent of the Company in Fremont County, Colorado. His parents were named beneficiaries in the application which was forwarded to the Company's home office in Lincoln, Nebraska. The Company's local agent was notified that in view of certain statements concerning the applicant's previous health, a medical examination would be required. The letter asking for the physical examination of applicant was dated December 10, 1953. It appears that applicant desired to be examined by his personal physician, a Dr. Davis, who was out of town and did not return until January 6,

1954, at which time applicant was examined by Dr. Davis, who promptly reported his findings to the Company. On January 15, 1954, the Company advised its local agent that it had declined the risk, but had secured reinsurance from another company and the Company enclosed a new policy at a "high rate up," some two times the original premium stated in Orlando's application. The new policy did not include the double indemnity feature. Upon receipt of this policy and the accompanying letter, the local agent asked Dr. Davis to further communicate with the chief medical advisor of the Company and suggest that the Company reconsider its decision and issue the original policy because Orlando "seemed to be perfectly well and working each day." This Dr. Davis did, but the Company declined to change its decision in the matter. The local agent did not communicate with Orlando meantime, and on January 23, 1954, he was injured in an automobile accident and died as a result thereof. The substitute policy was never delivered to Orlando and remained in the hands of the local agent.

Two claims were stated in the complaint, one by the Administrator on alleged negligence consisting of unreasonable delay in acting on the application, and the second a claim on behalf of the parents, named as beneficiaries in the application for the insurance.

The Company offered to return the first quarterly premium paid when the application was forwarded to the Company; denied any negligence on its part or that any insurance on the life of Orlando was in force when he departed this life.

The sole question presented is whether a contract of insurance on the life of deceased existed at the time of his demise.

█ It is crystal clear from this record that Orlando's original application was declined by the Company due to a cardiac condition. The Company, after medical examination, made a counter-proposal which was never

accepted by Orlando. Until accepted by him no contract existed. *Constitution Life Ins. Co. v. Rogerson,* 130 Colo. 26, 273 P. (2d) 1019. Unless there is a meeting of the minds, no contract exists. 29 A.J. 154, 44 C.J.S. 972. In *Columbia National Life Ins. Co. v. McClain,* 115 Colo. 458, 174 P. (2d) 348, we held that the term of a counter-proposal policy began when the policy took effect, and that it took effect only when it was accepted by the applicant. This case involved language in the policy tantamount to the language employed in the application signed by Orlando, which reads: "That there shall be no contract of insurance until a policy shall have been delivered to me and the premium paid to the home office of said Company in Lincoln, Nebraska, during my life time and in good health."

██ Where the parties agree by stipulation in the application for an insurance policy, that the contract shall not become effective until the policy is delivered to or received by the applicant, delivery to the applicant, or on his order, is essential to the completion and enforceability of the insurance contract. Until the policy is delivered, the presumption exists that there were negotiations, but no binding contract. *DeFord v. New York Life Ins. Co.,* 81 Colo. 518, 256 Pac. 317.

We quote from *Thomas v. Life Ins. Co. of Georgia,* 219 La. 1099, 55 So. 2d 705: "On the main demand, the plaintiff apparently conceded, as she must * * * that the application of her deceased husband was in effect rejected by the defendant company when it issued a new form of contract for his consideration incorporating different terms and provisions and carrying a higher premium (this counter-offer never ripening into a contract since it was never even submitted for acceptance) * * *." See, also, *Corning v. Prudential Ins. Co.,* 288 N.Y.S. 661; *Drake v. Missouri State Life Ins. Co.,* 21 Fed. 2d 39; *Morford v. California Western States Life Ins. Co.,* 166 Ore. 575, 113 P. (2d) 629. In the instant case the Company acted without unreasonable delay.

■ We think the universal rule is that the counter-proposal policy could not bind the Company until it had been delivered to and accepted by the applicant and the additional premium paid thereon as provided in the application. In the instant case there was no constructive delivery of the policy. The minds of the parties had not met. In *Morford v. California Western States Life Ins. Co.*, supra, it was said: "* * * ordinarily, where the contract is different from that applied for, * * * delivery is not automatic upon sending it to the agent. * * * The delivery of the contract to the agent is not of itself sufficient to make him an agent of the insured where some condition precedent must first be fulfilled."

We must conclude that the trial court erred in entering judgment in favor of the beneficiaries on an insurance contract which was never delivered or accepted, hence the judgment is reversed and the cause remanded with direction to dismiss plaintiffs' complaint.