No. 18,096.

PETE DENNING *v.* A. D. WILSON & COMPANY.
(326 P. [2d] 77)

Decided May 19, 1958.   Rehearing denied June 16, 1958.

Messrs. DAVIS & LUTZ, Mr. JOHN T. MALEY, for plaintiff in error.

Mr. L. H. DRATH, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE parties will be designated as they appeared in the trial court or by name. Plaintiff in error Denning was the defendant below. Defendant in error company brought the suit in the district court seeking to foreclose on certain real estate given as security for construction loans made to Denning. Because the promissory note and trust deed provided that in the event of suit the defendant should pay reasonable attorney fees, the complaint included the allegation that the plaintiff was obligated to pay the sum of $2000.00 as attorney fees and that the sum was reasonable. The defendant Denning filed an eight-word answer to the complaint denying "each and every allegation of the complaint" and set up seventeen counterclaims against plaintiff company. By the time the cause came to trial, some two years later, the defendant had paid off the promissory note and secured the release of the deeds of trust. Therefore,

the only issues remaining to be tried were the defendant's counterclaims.

The first nine counterclaims were for damages predicated on alleged violations of the federal statutes concerning the loan of money for so-called "G.I." or "F.H.A." construction loans. Counterclaims Nos. 10 to 16, inclusive, were for treble damages for alleged violation of what is familiarly known as the "1913 Money Lender's Act." C.R.S. '53, 73-3-1, et seq.

Counterclaim No. 17 was for an accounting predicated on the alleged overcharges enumerated in claims ten to sixteen, inclusive. All of the counterclaims except No. 17 were dismissed by the court. The court predicated its dismissal of counts one to nine inclusive on lack of evidence, and no complaint is made in this court as to the judgment of dismissal on those claims. Defendant seeks reversal of the judgment of dismissal on claims ten to sixteen, inclusive, on each of which the court found the bar of the one-year statute of limitations properly pleaded and controlling.

A judgment in the amount of $831.62 was entered in favor of defendant and against plaintiff on the seventeenth counterclaim. Cross-errors are assigned by plaintiff seeking to reverse that judgment. Additional cross-error is assigned to the refusal of the court to award the plaintiff attorney fees incurred by reason of the foreclosure proceedings.

First Question to be Determined.

*Is an allegation in a reply to a counterclaim that "said counterclaim is barred by the statute of limitations of this State in such case made and provided" a sufficient pleading to comply with R.C.P. 8 (c), (e) (1) and (f)?*

This question is answered in the affirmative.

Each counterclaim seeks to recover a penalty under the "1913 Money Lender's Act" (C.R.S. '53, 73-3-1, et seq.). Except for this act no cause of action accrued to the defendant. Since he relies upon its provisions he is confronted with section 7 which limits his right to

recovery as follows: "* * *provided such action shall be brought within one year after the date of such payment or delivery."

The statute in question is penal and must be strictly construed. 91 C.J.S. 749, sec. 144. The time within which plaintiff must bring his action is of the very essence of his claim, and even a general plea denying existence of his cause of action would be sufficient. *Chivington v. The Colorado Springs Co.,* 9 Colo. 597, 14 Pac. 212; *Atchison, Topeka & Santa Fe R.R. Co. v. Tanner,* 19 Colo. 559, 36 Pac. 541; *Western Electrical Company v. Pickett,* 51 Colo. 415, 118 Pac. 988. Under our rules of pleading, the allegation that an action is barred by the statute "in such case made and provided" is certainly a reference to the statute on which plaintiff relies and does not require specific citation to chapter and page. As the trial court aptly found, no motion to make the allegation more definite and certain was filed, and nothing to indicate that counsel was not aware of the particular limitation referred to.

Section Question to be Determined.

*Did the court err in entering a judgment in favor of the defendant on the 17th counterclaim predicted upon the same alleged overcharges enumerated in claims 10 to 16, inclusive?*

This question is answered in the affirmative.

In the absence of the penal statute upon which defendant relies, no overcharges would be present in the transactions by which the defendant obtained his loans from Wilson & Company. The evidence discloses that the interest charged was 5%. In order to determine that any of the other payments made, which were designated as "escrow fees" "brokerage charges" "commitment fees" "sales service charges" "abstracting and recording fees" "attorney's examination fees" were interest payments, such charges had to be construed in connection with the act in which the *interest* allowed to a *licensee* is defined to cover "all expenses, demands,

and services of every character, including notarial and recording fees and charges, * * *." Actions predicated upon an alleged violation of the act must be brought within one year, and if not so brought there can be no cause of action, hence the definitions therein of interest and other prohibited charges are not pertinent in construing the present transaction. In the absence of the "1913 Act" all of the charges made by the lender were regular and customary in the loan business. In fact they are actual expenses incurred by the lender in obtaining capital for lending purposes. They can not be construed as "interest" except under the broad language of the "1913 Act." So if the action was barred, as it was, in connection with the claim for treble damages, no action accrued for any of the alleged "excess charges." The court should have dismissed counterclaim No. 17 as barred by the limitations of the act.

Third Question to be Determined.

*Did the court err in denying plaintiff company attorney fees in connection with the suit in foreclosure?*

This question is answered in the affirmative.

■ The note and deed of trust provided, as is customary in such documents, that if it was necessary to bring suit to enforce collection or to foreclose upon the security that the borrower should pay a reasonable attorney fee. Suit was necessary and was instituted. It was two years in coming to trial, and in the meantime, by periodic payments which plaintiff accepted, the defendant was able to pay off his indebtedness and to thus save his property from foreclosure. There was no agreement between the parties when the payments were collected that the attorney fees would not be paid. In fact at the pre-trial conference approximately two months prior to trial the court entered an order as follows: "Without prejudice to the rights of the defendant under the Answer, *defendant agrees that the Court may set the amount of a reasonable attorney's fee* without the necessity of evidence thereon in the event of

a finding for the plaintiff on that issue." (Emphasis supplied.) The finding by the court on the issue was that the plaintiff waived the attorney fee. There is nothing in the record to support the finding of a waiver. On the contrary the only thing to be determined by the court was the amount thereof.

The judgment of the trial court is affirmed as to dismissal of the counterclaims 1 to 16, but the judgment on the 17th counterclaim is reversed and the cause remanded with directions to dismiss that counterclaim and to vacate the judgment thereon. It is further directed that the trial court enter judgment in favor of plaintiff A. D. Wilson & Company and against defendant Pete Denning in an amount which the court finds to be reasonable for and on account of attorney fees incurred by the company. In that respect it is ordered that the court take evidence to determine what portion of the law suit was devoted by the attorneys to the prosecution of the plaintiff's claim as distinguished from the work done in defense of the counterclaim.

MR. JUSTICE FRANTZ does not participate.