## No. C-859

## Theresa Wade v. Olinger Life Insurance Company

(560 P.2d 446)

Decided January 31, 1977. Opinion modified and as modified rehearing denied March 14, 1977.

Shelley B. Don, for petitioner.

Gorsuch, Kirgis, Campbell, Walker & Grover, Robert E. Warren, Jr., Michael J. Wadle, for respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We granted certiorari to review the decision in *Wade v. Olinger Life Insurance Co.*, 37 Colo. App. 44, 544 P.2d 412 (1975). We reverse and remand with directions.

The petitioner is a 28-year-old woman with a ninth grade education. In 1971, the Olinger Life Insurance Company solicited her business. In response, the petitioner applied for a life insurance (funeral arrangements) policy for her mother in the amount of $1,500, and named herself as beneficiary. An agent for the insurer came to the petitioner's home, interviewed the petitioner, and filled out the application form for her.

The agent testified that he had been selling insurance for sixteen years, and that he conducted about 300 interviews per year. While his ability to recall the situation at the petitioner's home was questionable, his testimony did indicate a general procedure of initially asking some general questions regarding the health of the insured and then reading through the questions on the form, but omitting up to half of the items in the list of relevant ailments. The omitted items were supposed to be checked later, near the end of the interview, after the applicant was asked to sign the form and to indicate the amount of coverage desired. Apparently, this was to avoid "embarrassing" the applicant. The agent stated that his incentive for selling policies consisted of a commission. The commission was equal to the first year's premium on the policy. His entitlement to the commission was not affected by the continuation or the ultimate status of a policy which he sold.

During the course of the interview with the petitioner, the agent advised her that he was seeking information only as to things which were "serious." He then read *parts* of the following questions, apparently deleting portions which he felt might be "embarrassing":

"3. Does any person above named now have or did he or she ever have any of the following: Heart trouble, high blood pressure, tuberculosis, paralysis, cancer, epilepsy, tumor, venereal disease, kidney trouble, ulcer, diabetes, alcoholism, asthma, emphysema, dropsy, swelling or edema, circulatory ailment, rheumatism, arthritis, rheumatic fever, muscular disease, physical injury, physical or mental defect, other disease or ailment or surgical operation?

"4. Has any person named been attended by a physician or practitioner for treatment or been admitted to a hospital or sanitarium in the past five years?"

At the end of the interview, just prior to asking the petitioner to initial the form, the agent may have mentioned the omitted items. The application form indicated that the petitioner answered both questions in the negative.

Subsequently, petitioner's mother died of cancer and petitioner made a claim for benefits due under the policy.[1] The insurer refused to pay, claiming fraud with respect to the responses to questions 3 and 4.

---

[1] The insured died within two years of the date of the execution of the insurance contract. Accordingly, the "incontestable" clause of the contract was not in effect. *See* section 10-7-102(1)(b), C.R.S. 1973; *Union Mutual Insurance Co. v. Bailey*, 99 Colo. 570, 64 P.2d 1267 (1937).

Evidence at trial indicated that the mother had gone to a hospital emergency room for consultation regarding a foot injury in 1970. The petitioner testified that she felt that this incident was not serious, and the record below gives no evidence as to the seriousness of this injury.[2] Other evidence indicated that the insured had received some treatment for a miscarriage, high blood pressure, and arthritis. The petitioner testified that she knew only of treatment for colds and for the miscarriage. She explicitly advised the agent of the miscarriage treatment and some "check-ups," but he told her such matters were unimportant.

On two occasions, in 1967 and 1970, the petitioner also signed treatment authorization forms for her mother. Hospital records indicated that, pursuant to these authorizations, the insured was examined briefly and discharged within a few hours. Those records contain a report of a drinking spree and a tentative diagnosis of "alcoholism." The record does not show that the plaintiff had knowledge of the content of these records. The medical records indicated that the insured saw only a nurse or social aide, rather than a doctor, on several occasions.

The trial court entered judgment for the petitioner holding that "the plaintiff answered the questions truthfully without any intent to deceive or misrepresent." In reversing, the court of appeals held that:

"In evaluating the plaintiff's answers to the questions on the application form, the trial court obviously considered those answers in light of the agent's advice to plaintiff that Olinger was only interested in information concerning injuries or diseases that were 'serious.' In this context, the trial court found that plaintiff answered the questions truthfully to the best of her knowledge. However, if the agent's statements are in conflict with the instructions on the application, plaintiff may not rely on the instructions of Olinger's agent relative to how the questions on the application must be answered."

The issues before us are (1) whether, under the circumstances of this case, application of section 10-2-204, C.R.S. 1973, bars petitioner's claim of reliance on the representations of the agent, and (2) whether, under the circumstances of this case, the petitioner possessed the requisite state of mind to allow the insurer to avoid the policy.

## I.
### Misrepresentation by the Agent

Section 10-2-204, C.R.S. 1973, provides, in pertinent part:

---

[2] Thus, the materiality of this fact was not proven by the insurer. *See Farmers and Bankers Life Insurance Co. v. Allingham*, 457 F.2d 21 (10th Cir. 1972) (applying Colorado law).

"[B]ut no statement or declaration made to or by an agent . . . not contained in the application, shall be taken or considered as having been made to or brought to the notice or knowledge of the company, or as charging it with any liability by reason thereof."[3]

In applying the statute to this case, we note that the insurer never raised the issue of the applicability of the statute in his pleadings, during the course of the trial, or in his motion for a new trial. We are, thus, presented with application of a statute not raised or considered below. This alone may be considered a sufficient basis for waiver of the statutory protection. *See* C.R.C.P. 9(i); *People ex rel. Kinsey v. Sumner*, 34 Colo. App. 61, 525 P.2d 512 (1974). *See also Denning v. A. V. Wilson & Co.*, 137 Colo. 372, 326 P.2d 77 (1958). Even assuming that the application of the statute had been properly raised, we find the statute, under constructions previously adopted by this court, inapposite to the facts of this case.

In *New York Life Insurance Co. v. Fukushima*, 74 Colo. 236, 220 P. 994 (1923), this court limited the effect of the above statute in these terms:

"The solicitor and medical examiner of an insurance company are its agents, their *acts* and knowledge are those of their principal and the insured cannot be held responsible for a wrong perpetrated through their fraud or *negligence*. False statements . . . known to them at the time made to be false are no defense." (Emphasis added.)

*Accord, Federal Life Insurance Co. v. Kras*, 96 Colo. 589, 45 P.2d 636 (1935); *Northwestern Mutual Life Insurance Co. v. Farnsworth*, 60 Colo. 324, 153 P. 699 (1915); *see also Constitution Life Insurance Co. v. Rogerson*, 130 Colo. 26, 273 P.2d 1019 (1954); *German American Insurance Co. v. Hyman*, 42 Colo. 156, 94 P.27 (1908) (no-waiver clause in policy held inapplicable because agent's acts estopped insurer; such clauses are to be narrowly construed); *Pomeroy v. Rocky Mountain Insurance and Savings Institute*, 9 Colo. 295, 12 P. 153 (1886) (agent's waiver of insurer's claim of misrepresentation against applicant).

A situation similar to the instant case arose in *United American Life Insurance Co. v. Rebarchek*, 134 F.Supp. 554 (D. Colo. 1955). There, the insurer sought to avoid the policy because of "material misrepresentations" by the insured. The agent of the insurer had filled out the application. The insured was asked, pursuant to the application, "Do you use alcoholic beverages in any form?" He responded: "Sure, I take a drink now and then moderately." The agent then said: "Sure, put down 'No,' because we all do once in a while." The court then noted that under Colorado law,

---

[3] The statute also provides that an "agent who knowingly procures by fraudulent representations payment or an obligation for payment of a premium of insurance is guilty of a misdemeanor . . . ."

". . . since *misinterpretation, negligence* or fraud on the part of the agent in such circumstances fall *without the statutory probition*, by the same reasoning such also fall without the policy limitations on 'statements and promises' of the agent."

The *Rebarchek* court relied, in part, upon *Suravitz v. Prudential Insurance Co.*, 244 Pa. 582, 91 A. 495 (1914) (policy provision stating that agent could not bind the company "falls short of protecting the principal from the negligence or fraud of the agent in preparing the application.").

Even where the statute has been applied to prevent recovery, the agent's act has been such as to clearly contradict the terms of the insurer's application form or policy. In *Benson v. Banker's Life and Casualty Co.*, 147 Colo. 175, 362 P.2d 1039 (1961), we applied the statute, to the issue of

"whether a misstatement of an insurance company agent that the company is interested only in illness which occurred within the previous five year period, which statement is contrary to the express terms of the insurance contract, is binding upon the company so as to require that the policy be upheld and enforced notwithstanding the falsity of the information contained therein."

We concluded that "[t]he agent's oral representations, *contradicting the express terms of the insurance contract*, could not be binding on the defendant company." (Emphasis added.) *See also Warner v. Farmer's Automobile Inter-Insurance Exchange*, 104 Colo. 359, 90 P. 965 (1934) (attempted waiver of forfeiture clause by agent); *Commonwealth Casualty Insurance Co. v. Kuhrt*, 75 Colo. 175, 225 P. 251 (1924) (regarding authority of agent to bind company as to effective date of insurance). *But see Massachusetts Protective Ass'n v. Allen*, 54 F.2d 788 (D. Mo. 1931) (applying Colorado law to preclude insured's claim of entry of false answers by agent).

The problem we face in this case was aptly stated in *Cadez v. General Casualty Co.*, 298 F.2d 535 (10th Cir. 1961):

"It may be that some insurance agents in their enthusiasm to produce business make reckless or negligent statements concerning policy coverage. The complexity of modern insurance contracts is such that persons desiring protection understandably place great reliance on the agent who handles their insurance business."

�rsquo;The petitioner in this case was faced with questions which, if taken literally, would require an open-ended, exhaustive disclosure of even the slightest ill-feeling ever suffered by her mother. Therefore, in asking the agent about the proper construction to be given to these questions, the petitioner was not seeking an alteration or waiver of the express terms of the contract or application form; she was merely seeking to make sense of otherwise unanswerable questions. The agent's response that the insurance

company was interested only in "serious" matters was a reasonable *interpretation* of the form. *See United American Life Insurance Co. v. Rebarchek, supra.* It did not contradict the terms of the application and is not within the letter or policy of the insurer's statutory protection against the waiver of express terms by agents. If the agent was negligent in his interpretation of the form, the responsibility for such error must lie with the insurer. *See New York Life Insurance Co. v. Fukushima, supra.* To hold otherwise would invite promulgation of insurance application forms and conduct by an agent which would trap the unwary.[4]

The trial court found that the petitioner had answered the questions "truthfully" and in good faith. Even had application of the statute been raised below, the result, based upon the above analysis, would necessarily be the same. As there was competent evidence to support this finding below, we will not disturb it on appeal. *New York Life Insurance Co. v. Fukushima, supra.*

## II.
### *The Applicant's State of Mind*

Consistency in the articulation of principles governing the avoidance of insurance policies has been a troublesome task in this jurisdiction.[5] In *Germania Life Insurance Co. v. Klein*, 25 Colo. App. 326, 137 P. 73 (1913), the court held, on facts in which the misrepresentations were "grossly false" and in which a claim of ignorance was "almost incredible," that:

---

[4] A similar construction was applied to a Missouri statute in *Ross-Langford v. Mercantile Town Mutual Insurance Co.*, 97 Mo.App. 79, 71 S.W. 720 (1902) (waiver by soliciting agent of statutory protection). *See also DeSoto Life Insurance Co. v. Johnson*, 208 Ark. 795, 187 S.W.2d 883 (1945) (estoppel); *Woodmen of World Life Insurance Society v. Jackson*, 243 F.2d 558 (5th Cir. 1957) (applying Florida law); *See generally* Annot., 26 A.L.R.3d 6, 256 (1969).

[5] There exist at least two divergent lines of authority in this jurisdiction. One line of cases applies the rule in *Germania Life Insurance Co. v. Klein*, 25 Colo. App. 326, 137 P. 73 (1913) (quoted in text below) without reference to the limiting language in that decision that the rule was applicable to "matters . . . which are *within the knowledge of the applicant*." (Emphasis added.) *See, e.g., Benson v. Bankers Life and Casualty Co.*, 147 Colo. 175, 362 P.2d 1039 (1961); *Safeco Insurance Co. v. Goncha*, 142 Colo. 170, 350 P.2d 189 (1960); *Drake v. State Farm Mutual Automobile Insurance Co.*, 142 Colo. 244, 350 P.2d 566 (1960); *Olinger Mutual Benefit Ass'n v. Christy*, 139 Colo. 425, 342 P.2d 1000 (1959) (dissent); *Capitol Life Insurance Co. v. Thurnau*, 130 Colo. 345, 275 P.2d 940 (1954); *North American Life Insurance Co. v. Korrey*, 113 Colo. 359, 157 P.2d 149 (1945); *Security Benefit Ass'n v. Talley*, 78 Colo. 358, 241 P. 721 (1925); *Hollinger v. Mutual Benefit Life Insurance Co.*, 36 Colo.App. 306, 541 P.2d 128 (1975), *rev'd*, Supreme Court No. C-793, announced contemporaneously with this opinion; *Fallis v. Zurich Insurance Co.*, 28 Colo.App. 235, 472 P.2d 174 (1970); *see also Johnson v. State Farm Life Insurance Co.*, 176 F.2d 83 (10th Cir. 1949); *Zolintakis v. Equitable Life Insurance Co.*, 108 F.2d 902 (10th Cir. 1940) (dictum); *Prudential Insurance Co. v. Winn*, 71 F.2d 126 (9th Cir. 1934) (dictum).

Another line of precedent has refused either to recognize or apply the *Germania* rule, instead relying upon an *additional* element beyond the applicant's knowledge. *See, e.g., Olinger Mutual Benefit Ass'n v. Christy, supra* (requires proof of fraud beyond reasonable doubt or by clear and convincing evidence); *Supreme Tribe of Ben-Hur v. York*, 70 Colo. 175, 197 P. 1012 (1921)

"A false statement or declaration of a fact material to the risk, and upon which the policy is based, will avoid the policy, whether that misrepresentation be the result of intention or of mistake, and whether made in good faith or not so made."

More recently, the court of appeals, in *Gomogda v. Prudential Life Insurance Co.*, 31 Colo.App. 154, 501 P.2d 756 (1972), found that:

". . . an insurance policy cannot be avoided on the basis of false statements or declarations of an applicant, unless such statements or declarations are material to the risk or form the basis on which the policy is issued, and unless they are made with knowledge on the part of the applicant of matters which make them false or misleading. Thus, the test is one of fraud and deceit."

■ The *Gomogda* decision reviewed prior Colorado case law and concluded that an element of knowledge on the part of the applicant was required in order for an insurer to avoid the policy. We agree with that portion of the *Gomogda* analysis. While there exist some exceptions by virtue of case law and special statutes, the majority rule among other jurisdictions clearly appears to require proof of an element of "knowledge," while dispensing with proof of an "intent to deceive." *See generally* 17 *J. Appleman, Insurance Law and Practice* § § 73-75, 9481-9503 (1945 and Supp. 1976); 7 *R. Anderson, Couch on Insurance 2d* chap. 37 (1961 and Supp. 1976). This is the rule in this jurisdiction. *See Hollinger v. Mutual Benefit Life Insurance Co.,* 192 Colo. 377, 560 P.2d 824.

The nature of the disclosures required on insurance application forms such as the one in this case presents an additional problem. The pervasive, detailed, and often open-ended questions asked of the many insurance applicants increases the opportunity for innocent omission or mis-statement of "known," but seemingly trivial items. Moreover, the value-judgments inherent in defining such terms as "heart trouble," "physical or mental defect," "alcoholism" or "other . . . ailment" make evaluation of the state of mind required to avoid an insurance contract difficult. The legal concept of "knowledge" may be too imprecise if used alone. In the instant case, the applicant may have "known" that her answers to the questions were "false" in some literal sense, but the instructions by the agent that

---

(fraud); *Gomogda v. Prudential Insurance Co.*, 31 Colo.App. 154, 501 P.2d 756 (1972) (fraud); *see also Farmers and Bankers Life Insurance Co. v. Allingham*, 457 F.2d 21 (10th Cir. 1972) (applying Colorado law; denying relief to insurer where applicant said he was in good health and failed to inform insurer that he had recently undergone extensive medical examinations and muscle biopsy); *Commercial Insurance Co. v. Smith*, 417 F.2d 1330 (10th Cir. 1969) (impact of *Germania* rule avoided by court's construction of pre-trial order as waiver of insurer's claim for recission without proof of fraud).

Finally, at least one case appears to rely exclusively upon "knowledge" as the relevant inquiry into the applicant's state of mind. *See Southern Surety Co. v. Farrell*, 79 Colo. 53, 244 P. 475 (1926).

the insurer was interested only in "serious" matters may have disarmed any concern that these matters were important to the insurer.

■ In order to protect innocent insurance applicants, an applicant must be reasonably chargeable with knowledge that the facts omitted or misrepresented were within the scope of questions asked on the application. A particular misrepresentation not only must be *actually* material to the insurer's risk, as demonstrated by customary underwriting procedures, it also must be such that a *reasonable person* would, under the circumstances, have understood that the question calls for disclosure of specific information.[6]
*See Colo. J.I.* 19.4;[7] *accord, Unger v. Metropolitan Life Insurance Co.*, 103 Ill.App.2d 150, 242 N.E.2d 907 (1968); *W. Prosser, The Law of Torts,* § 108 at 718 (4th ed. 1971).

■ For example, an applicant may "know" that he or the prospective insured has had "any physical injury" in the sense of a bruise or sore muscle from some routine physical activity. Under the rule announced in this case, the trier of fact would look at the circumstances of the case, *e.g.,* the bruise or soreness, and decide if a *reasonable person* would have

---

[6] We are aware that past decisions of this court have stated that "it is for the insurer to determine the materiality or importance of the answers to such questions rather than for the applicant . . . regardless of the fact that he may consider them of no consequence." *Capitol Life Insurance Co. v. Thurnau*, 130 Colo. 345, 275 P.2d 940 (1954). *See, e.g., North American Life Insurance Co. v. Korrey*, 113 Colo. 359, 157 P.2d 149 (1945). The point of such cases was that the *subjective* state of mind of the applicant — whether he *actually* appreciated the importance of a given fact — is irrelevant to the issue of materiality. We agree. The rule under today's decision only makes explicit the proposition implied in our previous cases: it is the insurer's burden to show both that he relied on the representations and that the it was reasonable for the applicant, looking at the application form and the conduct of the agent, to expect the insurer to do so. The Tenth Circuit recently reached a similar result under Colorado law in *Farmers and Bankers Life Insurance Co. v. Allingham*, 457 F.2d 21 (1972). The applicant was faced with questions as to whether he had any physical "ailments" or had a "surgical operation." He had recently undergone extensive medical examinations and had a biopsy of muscle tissue for diagnostic purposes, but answered the questions in the negative. After phrasing the issue as whether the insurer had shown the facts omitted to be "material to the risk," the court noted that the "ailments had not risen to such magnitude that Allingham's failure to disclose was a deliberate concealment of matters within his particular knowledge," and that, as a matter of definition, the term "biopsy" was not included in the term "surgical operation."

[7] The *Colorado Jury Instructions* define "material fact" as one to which "a reasonably prudent person under the circumstances would attach importance . . . in determining his course of action." While the *Colorado Jury Instructions* are not intended to operate as positive law, they are intended to operate as consistent guides to the proper legal principles involved. *See* C.R.C.P. 51.1, *construed in Gallegos v. Graff*, 32 Colo. App. 213, 508 P.2d 798 (1973). *See also Davis v. Cline*, 177 Colo. 204, 493 P.2d 362 (1972). In the absence of authority to the contrary, the legal principles articulated in the instructions should be considered persuasive.

perceived it as an item which, because of the nature of the questions asked and the type of insurance, the insurer would desire to know about in assessing the risks.[8]

Contemporaneously with the announcement of this opinion, the elements which an insurer must prove in order to avoid an insurance policy for fraud were set out in *Hollinger v. Mutual Benefit Life Insurance Co.,* 192 Colo. 377, 560 P.2d 824.

■ It appears that the trial court applied an erroneous ("intent to deceive") test.

Accordingly, we reverse the court of appeals and order that the case be remanded to the trial court for a redetermination in light of the principles articulated in this decision.

MR. JUSTICE HODGES, MR. JUSTICE GROVES, MR. JUSTICE LEE, and MR. JUSTICE CARRIGAN concur.

MR. CHIEF JUSTICE PRINGLE concurs in the result.

MR. JUSTICE KELLEY dissents.

MR. JUSTICE KELLEY dissenting:

I respectfully dissent. I interpret the record with respect to the factual situation differently than does the majority. As a result, I agree with the opinion of the court of appeals. Both the reasoning and conclusions expressed therein appear to me to be consistent with the opinion of this court in *Hollinger v. Mutual Benefit Life Insurance Co.,* 192 Colo. 377, 560 P.2d 824.

---

[8] A similar analysis was applied recently in *Howard v. Golden State Mutual Life Insurance Co.,* 60 Mich. App. 469, 231 N.W.2d 655 (1975), where the court noted:

"[I]n insurance law, misrepresentation refers to a truth synonymous with sincerity and lack of fraud, rather than to the literal meaning of truth, which is relating things exactly as they are. The truth or falsity of a representation on an insurance policy should be examined in the light of what the applicant knew or had reason to know at the time of the application.

. . . .

"The insured is not specially equipped to determine what facts are material to the acceptance of a risk. He may be expected to answer in *good faith* the questions that are put to him, but not to bring an understanding of medicine beyond that of the medical profession to the problem of materiality. . . .

"In the case before us, the [applicant] answered the questions put to him by the insurance application and the insurance agent. We agree . . . that his answers should not be judged on a standard beyond which the [applicant] was capable of answering." (Emphasis in original.)

*See generally,* Annot., 26 A.L.R.3d 1061 (1969).