**GROUND IMPROVEMENT TECHNIQUES, INC.,**
Plaintiff,

v.

**MERCHANTS BONDING COMPANY,**
Defendant,

and

**Merchants Bonding Company,
Third–Party Plaintiff,**

v.

**R.N. Robinson & Son, Inc., Robert N. Robinson, Jr. and Robert N. Robinson, Sr., Third–Party Defendants.**

Civil Action Nos. 97–K–1203, 96–K–1622.

United States District Court,
D. Colorado.

Aug. 27, 1999.

Jeffery B. Stalder, Hall & Evans, L.L.C., Denver, CO, for third-party defendants.

Andrew J. Friedrich, Kerr Friedrich Brousseau Bartlett, LLC, Denver, CO.

## MEMORANDUM DECISION ON RECONSIDERATION OF MAY 11, 1999 ORDER

KANE, Senior District Judge.

## I.  INTRODUCTION.

This litigation arose between Ground Improvement Techniques (GIT) and Merchants Bonding Company (Merchants) after Merchant's subcontractor, Robinson & Son (Robinson) defaulted on the Slick Rock, Colorado, Uranium Mill Tailings Remedial Action Project.  Merchants issued bonds to guarantee the performance and payment obligations of Robinson to GIT under the subcontract.  After Robinson defaulted, GIT sought indemnification from Merchants for the work to have been performed by Robinson.  Merchants seeks to avoid its obligation on the bond, claiming fraudulent concealment of material facts by GIT at the time the bond was issued.

On May 11, 1999, I issued an Order Granting GIT's Motion for Summary Judgment on Merchant's Counterclaim for Rescission.  Merchants moved for reconsideration of that Order in light of case law in the area of insurance fraud that it had failed to cite previously.  I agreed to reconsider and the parties have now briefed the issue in this new light.  The motion for reconsideration is now pending.  Jurisdiction is proper under 28 U.S.C. § 1332.  State law provides the legal standards to be applied, while procedural issues are governed by the Federal Rules of Civil Procedure.

## II.  BACKGROUND.

These related cases arose out of an environmental remediation and restoration

Frederick Huff, Denver, CO, Steven R. Schooley, Holland & Knight, LLP, Orlando, FL, for plaintiff.

Patrick Q. Hustead, Giovanni M. Ruscitti, The Hustead Law Firm, Denver, CO, for defendant and third-party plaintiff.

project initiated by the United States Department of Energy (DOE). The DOE contracted with Morrison Knudsen Company to collect contaminated mill tailings from different sites in the United States and bury them in a massive disposal cell to be constructed near Slick Rock, Colorado. Morrison Knudsen subcontracted with GIT, which in turn subcontracted with Robinson, to excavate the disposal cell in Burro Canyon.

Shortly after Robinson began the excavation work, it applied to Merchants for surety bonds guaranteeing its performance and costs under the subcontract. During its review of Robinson's application, Timothy Toole, then an underwriter trainee at Merchants, called Jeff Walker, Slick Rock project manager for GIT, to inquire about Robinson's bid on the excavation work and competency to perform the work. Later that day, Merchants approved performance and payment bonds guaranteeing Robinson's performance and insuring labor and material payments under the subcontract with GIT.

Almost immediately after Robinson began excavation in Burro Canyon, a dispute arose between Robinson and GIT on the one hand, and GIT and Morrison Knudsen on the other, concerning acceptable excavation methods for the project. Because the different subcontracts were unclear on the excavation methods, Robinson proposed a single drill and blast plan based on test bores of the area and what Robinson claims to be the accepted industry standard. The subcontracts called for payment of one rate for excavation of softer top soil and a higher rate for nonrippable rock (harder soil or rock that had to be drilled and blasted before excavation). Based on this price structure for the excavation project, Morrison Knudsen rejected Robinson's proposed single drill and blast plan and insisted the excavation proceed piecemeal by removing any softer layers of topsoil and then drilling and blasting layers of rock before removal.

GIT initially sided with Robinson in this dispute, arguing the slower, step-by-step process would be more costly and result in time and cost overruns. GIT approached Morrison Knudsen seeking approval for Robinson's proposed single drill and blast plan, or, in the alternative, for increased time payment under the GIT/Morrison Knudsen contract to cover the original plan. Morrison Knudsen rejected both requests. GIT ultimately relented and informed Robinson the excavation would have to proceed by the slower step-by-step method at the original subcontract price.

For several months, Robinson tried to comply with these restrictions while continuing to insist on its original proposed excavation method or an increase in time and money under the subcontract. When it became clear Morrison Knudsen and GIT would not relent either on the money or excavation methodology, Robinson abandoned the project and defaulted on its subcontract claiming impossibility of performance and frustration of purpose.

After Robinson's departure, GIT approached Merchants under the performance bond for monies to replace Robinson and complete the excavation work. Merchants refused and GIT unsuccessfully attempted to do the work itself. GIT ultimately filed the instant lawsuit against Merchants seeking payment on the bonds, and Merchants counterclaimed for rescission based on fraud. In its counterclaim, Merchants contends GIT fraudulently concealed material facts about Robinson at the time the surety bonds were issued. Specifically, Merchants claims GIT was aware of the dispute over the excavation methodology at the time Robinson applied for the bonds, was cognizant of the impending default by Robinson due to the dispute, was in a position to inform Merchants of this information before the issuance of the bonds but did not due so, and is therefore responsible for Merchants issuing the performance bonds while the ongoing excavation dispute foretold the impending default of Robinson.

The factual disputes over who, as between GIT, Robinson, and Merchants knew, or is chargeable with knowing, of the excavation methodology dispute and the legal duties of each with respect to ascertaining or coming forward with this information, form the fulcrum upon which GIT's Motion for Summary Judgment must be reconsidered.

In its original opposition to GIT's Motion for Summary Judgment, Merchants argued GIT Project Manager Jeff Walker fraudulently concealed or misrepresented material information intending Merchants Underwriter Timothy Toole rely on the negative inference created by the omission to underwrite the Robinson subcontract. (Def.'s Resp. Pl.'s Mot.Summ.J. at 5–6.) In my May 11 Order, I determined Merchants had not presented sufficient evidence to create a triable question on the claim that Walker fraudulently misrepresented or concealed facts material to the issuance of the bonds and granted GIT's Motion for Summary Judgment. Merchants' Motion to Reconsider recasts the issue as one of insurance fraud, in which knowledge of the excavation dispute between GIT, Morrison Knudsen and Robinson is imputed to Walker, who was then duty bound as an "applicant" for the bond to disclose the dispute to Toole.

### III. MERITS.

In the May 11, 1999 Order, I found there were "simply no facts from which scienter or any otherwise actionable state of mind can be inferred on the part of Walker with respect to his May 1995 telephone conversation with Toole." Focusing on this point, Merchants' first argument on reconsideration is that a showing of intent is unnecessary to a claim for fraudulent concealment in the surety bond, citing *Wade v. Olinger Life Insurance Co.*, 192 Colo. 401, 560 P.2d 446, 451–52 (1977). (Def.'s Mot.Recons. at 5.)

*Wade* was an insurance case in which the insurer refused payment under a life insurance policy on grounds the applicant

had fraudulently misrepresented his health history. The Colorado Supreme Court considered the state of mind with which the insured would be required to have acted in order to void the policy for fraud, adopting the majority view from other jurisdictions that proving "knowledge" of falsity, rather than an "intent to deceive," was all that would be required of the insurer to prevail. 560 P.2d at 451–52. Merchants asserts *Wade* is applicable in the surety bond context, arguing "an obligee who [knowingly] conceals pertinent facts cannot later turn to the surety for reimbursement." (Def.'s Mot.Recons. at 6.) Accordingly, Merchants concludes it need only show Walker knew, or was chargeable with knowing, of the excavation dispute to assert a claim for fraud based on omission; not that Walker intended to deceive Toole. With respect to Walker's being "chargeable" with knowledge of the Robinson/Morrison Knudsen excavation dispute, Merchants reiterates its policy argument from earlier briefing that GIT's "corporate knowledge" is imputable to Walker as a management level GIT employee.

### A. *Legal Framework.*

■ While the proposition that an insurer need not show intent to deceive to assert a claim of fraudulent concealment against its insured is facially correct, it provides an inappropriate analogy to the present context. While similarities clearly exist, the insurance setting is fundamentally different from that of suretyship.

Suretyship is a credit transaction in which a surety, in providing bonds on behalf of its principal, is extending the surety's credit to the principal in order for the principal to enter into a contract with an obligee. The surety expects to incur no loss as a result of that extension of credit. In the event that the surety incurs a loss, the surety expects to be reimbursed for its loss by its principal and any third-party indemnitors.

*Salvage by the Surety* (George J. Bachrach ed., American Bar Association 1998). The transaction in which an insurer provides a policy to an insured, by contrast, is in effect a wager, based on statistical information, that the amount the insurer may be obligated to pay out under the policy will be less than the amount it collects in premium payments from the insured. Additionally, while the right to claim on an insurance policy is vested in the insured, the right to claim on the surety bond is vested in the obligee and not the principal that makes the application. These differences create obligations and expectations for each party to a surety bond that are not directly analogous to the insurance context.

In my view, an analysis of the duties and reasonable expectations of the different parties to come forth with information during the application for a surety bond is, therefore, incorrectly analyzed under case law concerning the insurance industry. There is an entire field of surety law that has developed through case law and the Restatement of Suretyship and Guaranty, now in its third revision, that forms a more appropriate framework for analysis.

Although the Colorado Supreme Court has considered a surety's ability to avoid liability on a bond where the underlying transactions between the primary parties was "contaminated by positive illegalities of which [the surety was] ignorant," *see First National Bank of Phillipsburg, Kansas v. Clark's Estate*, 59 Colo. 455, 149 P. 612 (1915), neither the Colorado Supreme Court nor the Court of Appeals has analyzed a surety's right to avoid liability based on fraud, i.e., based on claims that an obligee misrepresented or failed to disclose facts material to the bonding decision. The issue involves complex public policy questions that I decline, as a federal court sitting in diversity, to answer on behalf of the Colorado Supreme Court. Instead, and mindful of the Colorado courts' favorable view of the Restatement in other aspects of its jurisprudence, I look

to the legal framework articulated by the Restatement (Third) of Suretyship and Guaranty (Am.Law Inst.1996) ("Restatement") for my analysis.

Section 12 of the Restatement provides for the avoidance of surety obligations where the surety's assent was induced by a fraudulent or material misrepresentation under circumstances where its reliance on the misrepresentation was justified. Rest. (3d) Surety, § 12(1). In addition, and as applicable in this case, the Restatement specifically provides that under certain additional circumstances, a nondisclosure of facts may "constitute[ ]a material misrepresentation." *Id.*, §§ (3) & (4), comm. f.

Three criteria must be fulfilled for a nondisclosure to constitute a material misrepresentation: First, the obligee must know facts unknown to the surety that materially increase the surety's risk beyond that which the obligee has reason to believe the surety intends to assume; second, the obligee must have reason to believe the facts are unknown to the surety; and third, the obligee must have an opportunity to communicate the facts to the surety before the surety obligation becomes binding, but fail to do so. *See* § 12(3)(a)–(c). The question of whether the obligee has reason to believe that the facts unknown to the surety materially increase the surety's risk and that they are, in fact, unknown, "must be determined in light of the obligee's reasonable beliefs" as to three additional criteria: (a) the nature of the surety's relationship to the principal; (b) the nature of the surety's business; and (c) the surety's ability to obtain knowledge of such facts independently and in the exercise of ordinary care. *Id.* § 12(4).

Finally, and because sureties, like creditors generally, are expected to look out for themselves and ascertain the nature of their obligations, the Restatement specifically states that subsection 12(3) "places no burden on the obligee to investigate for the benefit of the [surety] ... [n]or does it require the obligee to take any particular

steps to ascertain whether the [surety] is acquainted with facts that the obligee may reasonably believe are known to both." Restatement § 12(3), comm. f.

■ Viewed together, subsections 12(3) and (4) of the Restatement provide for an intensely fact-based inquiry into the reasonability of both the surety's and the obligee's conduct. Applied in this case, I conclude this standard precludes entry of summary judgment in favor of GIT on Merchants' counterclaim for rescission.

### B. *Walker's Conduct.*

■ While GIT was not, under the Restatement standard, required to volunteer information to Merchants about Robinson or the excavation dispute, once contacted by Merchants, GIT's nondisclosure of the Robinson/GIT/Morrison Knudsen excavation dispute may constitute a material misrepresentation under the Restatement standard. To the extent the Toole–Walker telephone conversation forms the basis for Merchants' theory of relief, Merchants must prove (1) that Walker's actions with respect to the Slick Rock project bind GIT; and (2) that Walker (a) knew facts unknown to Merchants that materially increased Merchants' risk beyond that which GIT had reason to believe Merchants intended to assume, (b) had reason to believe those facts were unknown to Merchants, and (c) had a reasonable opportunity to communicate those facts to Toole. In support of their counterclaim for rescission, Merchants has come forward with the following facts.

The excavation dispute had arisen and was ongoing at the time Toole called Walker. The dispute implicated the duration, cost and possibly even the feasibility of the project. Merchants issued Robinson's performance bond shortly after this conversation, with no further inquiry or follow up. Walker was GIT's project manager for the Slick Rock site. Toole was referred to him when he called GIT to inquire about Robinson. When Toole asked about Robinson's bid and ability to per-

form the excavation work, Walker said he was "comfortable" with Robinson and said nothing about the excavation dispute.

GIT downplays the Toole–Walker telephone conversation, characterizing it as nothing more than a brief follow up to Robinson's bond application, made by an underwriter trainee, that gave rise to no duty and provided no opportunity for Walker to communicate information about the excavation dispute. In support of this contention, GIT points to the length of the conversation, its general nature, and the fact that Walker ended the conversation by inviting Toole to call again if additional information was needed and Toole did not do so. Notwithstanding the protestations, I find the facts presented, viewed in the light most favorable to Merchants, give rise to the reasonable inference that Merchants' obligations are voidable under Restatement § 12(3). Specifically, I conclude that a reasonable juror in this case could make findings that, before Merchants issued the Robinson bond, Walker knew of an ongoing dispute between Robinson/GIT and Morrison Knudsen regarding the cost and feasibility of the excavation job, that Walker had reason to believe not only that Merchants was unaware of the dispute, but also that the dispute materially affected the risk Merchants intended to assume in bonding Robinson, and that Walker had a reasonable opportunity to communicate this information to Toole but did not. While it is also true that this same hypothetical juror could apply the criteria identified at Restatement § 12(4) to find that Walker had no reason to believe Merchants was unaware of the dispute or that awareness of it would materially affect Merchants' bonding decision, but I conclude that determination is best left to the trier of fact in this case.

### IV. *CONCLUSION.*

Based on the foregoing, and upon reconsideration of my May 11 Order, IT IS ORDERED that GIT's Motion for Sum-

mary Judgment (Docket # 84) is DE-
NIED.