## No. 9827.

## THE SUPREME TRIBE OF BEN-HUR *v.* YORK.

Decided May 2, 1921.

Action to recover under a benefit certificate of a fraternal insurance society. Judgment for plaintiff.

### *Affirmed.*

1. INSURANCE—*Action on Life Policy—Defensive Proof.* In an action on a life insurance policy, where a defense is that the insured knowingly and intentionally made false statements as to his state of health, the alleged fraud must be established by affirmative proofs, and evidence that the insured in his application made statements which were untrue, does not meet the requirement in the absence of proof that he made them deliberately, knowing them to be false.

2. *Action on Policy—Defense—By-laws.* In an action against a fraternal insurance society on a life policy, the defense that the suit was not brought within the time fixed in the by-laws, cannot be invoked where it appears that the company requested additional time in which to investigate the claim, and the suit was instituted within a reasonable time after it finally declined to pay.

3.    *Instructions.* In an action on a life insurance policy, an instruction to the effect that the company physician who made the examination of the assured was its agent, and that in the absence of claim and proof that the examination was fraudulent and collusive, it must be presumed that the examiner was competent and the examination skillfully and honestly made, held to correctly state the law applicable to the facts.

*Error to the District Court of Pueblo County, Hon. James A. Park, Judge.*

Mr. W. O. PETERSON, for plaintiff in error.

Mr. S. S. PACKARD, for defendant in error.

MR. JUSTICE BAILEY delivered the opinion of the court.

SUIT was by May York to enforce payment of a benefit certificate for $1,000.00 issued by the defendant, a fraternal insurance society, upon the life of her husband. Verdict and judgment were in her favor for the full amount of the certificate, and defendant brings the cause here for review on error.

On June 6th, 1918, Charles J. York made application to the defendant society for insurance. In such application, in response to certain printed interrogatories, he answered that he had never changed or been advised to change his residence on account of health; that he had never had a number of specific diseases therein enumerated; that he had not consulted a physician since childhood, and that he had never had any serious illness or injury whatsoever. He also warranted his statements in the application as true, agreed that any untruthful answer should nullify his contract of insurance, and also formally accepted the laws, rules and regulations of the society as part of such contract, agreeing to faithfully abide thereby.

Immediately after signing the application, he was examined by a physician, the local medical examiner for the society, and was passed by him as a first class risk. On the 10th day of June next thereafter his application was accepted and the benefit certificate issued. On the 18th day

of September following, a little over three months. after the issuance of the certificate, York died of pulmonary tuberculosis.

The society asked for time to investigate the case before determining whether it would pay the claim, and several letters passed between the parties. Eventually payment was refused, and suit was brought, with the result above indicated.

There are two questions to be considered. The first is whether, upon the evidence adduced, the insured can be said to have been untruthful in answering the interrogatories in his application for insurance. It is admitted that the certificate of the local medical examiner for the society shows York to have been a well man, and a first class risk. The record also shows that on the 12th of June, 1918, six days after having been accepted by such examiner, he applied for insurance in another company and was rejected, on the ground that he was afflicted with tuberculosis. This creates a conflict in the evidence as to the actual physical condition of the insured, but establishes nothing as to the truth or falsity of his answers in his application. It by no means proves fraud on his part. It may well have been unknown to applicant that he was afflicted with tuberculosis. In the absence of proof to the contrary, his answers may have been honest, made in good faith and without ulterior motives. The only defense to the payment of the policy was that the assured knowingly and intentionally made such false statements. If the assured deliberately and knowingly made false representations as to the state of his health, by which the company was misled, there can be no recovery, but the fraud must be established by affirmative proofs. *Wich v. Equitable Fire & Marine Insurance Co.,* 2 Colo. App. 484, 31 Pac. 389. This is true even though the answers of the assured in his application are warranties. Bacon on Benefit Societies and Life Insurance, sec. 469.

In *Ley v. Metropolitan Life Ins. Co.,* 120 Iowa 204, (94 N. W. 568), attempt was made to avoid payment of a life

insurance policy on the ground that the insured had made false answers in his application. At page 210, the court said:

"To escape liability because of the uninsurable condition of the applicant's health or medical history, the insurer is required to show that the policy or health certificate was procured by fraud. It is a rule too well understood to require citation of authorities that the party alleging fraud must prove it. Now fraud has a well-defined meaning in law. * * * the definition is compressed into these words: 'Representation, falsity, scienter, deception, injury.' It follows, therefore, that proof of the falsity of the representation is proof of but one of several elements, each of which is essential to constitute fraud, and the burden is not removed from the party asserting it, until all are established by the evidence. If it be said that a representation may be made under such circumstances that, if false, we may safely conclude that its falsity was known to the party making it, the point can be conceded without affecting the rule as to the burden of proof. To establish its defense, it was incumbent on the defendant to prove not simply that the answers of the applicant were untrue, but that he knew them to be untrue, and thereby obtained the insurance. It is argued that, if the answers are found to be untrue, there is a presumption that the applicant knew it and intended to deceive. This, we think, is not the law. On the contrary, the law raises no presumption of knowledge on the part of the party making the representation from the mere fact that the representation is untrue."

There is absolutely no evidence to show knowledge on the part of the insured that he had tuberculosis at the time of applying for insurance with the defendant. Not only did the society fail to carry the burden of establishing this fact, but it seemingly made not the slightest attempt to do so. The verdict of the jury, in the entire absence of such testimony, may not properly be disturbed.

It is urged that a by-law of the society providing in substance that no action to recover upon any policy shall be

brought after one year from the death of the assured, precludes recovery. The suit was brought after the year had expired, but it appears from correspondence between the parties that the society repeatedly asked for additional time to investigate the claim, and did not finally refuse payment until a little more than a month before the year was up, when it proffered a compromise settlement. This was rejected, and demand was made for full payment. Upon refusal thereof suit was begun a little less than a month after the year had run.

By the two letters of the defendant in which requests for time to investigate were made and that no action be taken until investigation was concluded, the society is estopped to invoke this by-law, especially since it appears that the suit was commenced within a reasonable time after the defendant finally declined to pay. *David v. Oakland Home Ins. Co.,* 11 Wash. 181, 39 Pac. 443, and *Steel v. Phenix Ins. Co.,* 51 Fed. 715, 2 C. C. A. 463.

Error is assigned upon the giving of instruction numbered eight, which in substance declares that the company physician who made the examination of York was its agent, and that in the absence of claim and proof that such examination was fraudulent and collusive, it must be presumed that the examiner was competent and the examination skillfully and honestly made. This instruction correctly states the law applicable to the facts. In *McRory v. Puritans,* 60 Colo. 461, it is said:

"It is to be presumed that the medical examiner was competent, possessed of the proper qualifications, and made a thorough examination of the insured."

Particularly is this true where, as here, there is an entire absence of attack upon the good faith and efficiency of the examiner, either by pleading or proof.

Instruction numbered nine, to which exception is taken, relates to the delay in bringing the action. Upon the facts the instruction was proper, and the assignment, as already indicated, above, not sound. No prejudicial error appearing in the record, the judgment is affirmed.

MR. JUSTICE TELLER, sitting for MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE BURKE concur.