No. 17,210.

CAPITOL LIFE INSURANCE COMPANY *v.* THURNAU ET AL.
(275 P. [2d] 940)

Decided November 8, 1954.

Mr. J. P. NORDLUND, Messrs. WOOD & RIS, for plaintiff in error.

Mr. ARTHUR EVERETT SMALL, JR., Messrs. FARR & WILKINS, for defendants in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the Court.

THIS is an action based upon a contract for life insur-

ance wherein plaintiffs were successful in securing judgment — based upon a jury verdict in the trial court — against the Capitol Life Insurance Company, defendant therein.

Defendant denied liability under the insurance policy and affirmatively alleged, as one of its defenses, the inclusion as a part of the contract Parts I and II, being the written application therefor, signed by the insured, in which he made and certified as correctly recorded, complete and true, certain representations, declarations and statements contained in said application which, in fact, were false, untrue and incomplete, with the intent to deceive defendant and cause it to enter into said contract by the concealment of material facts relating to insurability of the insured.

Before the case was submitted to the jury counsel for defendant moved for a directed verdict and again, after the return of the verdict, moved that the same be set aside and judgment entered for the defendant, the denial of both of which motions is, inter alia, assigned as error on the part of the trial court.

The facts in the case are not materially in dispute. Condition 10 of the contract provides that, "This policy and the application therefor, a copy of which is attached hereto, constitute the entire contract. * * *" The attached application consists of Part I and Part II, to which we have hereinabove referred. Part I was dated March 22, 1949, signed by the insured; and Part II, relating to the medical history of the insured, was dated May 2, 1949, also was signed by the insured. The latter date must be accepted as the date of the application since the form thereof provides that: "It is understood and agreed that * * * the date of completion of this application shall be the date of this Part I, or of the last medical examination if any required by the Company in connection herewith, whichever date is later; * * * but the insurance thereunder shall not become effective and the Company shall be under no liability by virtue of

this application unless and until the policy is delivered to and accepted by me * * * while my health * * * and other conditions relating to my insurability remain as shown by this application * * *." The policy itself was not delivered until some few days following May 2, 1949, probably about May 5th, which became its effective date.

Part II of the application contains the basis of defendant's contention that the insured misrepresented certain material facts pertaining to his physical condition during the period of ten years preceding the issuance of said policy, claiming thereby justification for its refusal to admit liability thereunder. Part II, pertaining to physical condition and medical history, in so far as pertinent here, relates to certain questions and answers by the insured as follows:

Question "3c. Have you ever been under observation or treatment in any hospital, asylum, sanatorium or similar institution? (State when and where.)" (Ans.) "c. Yes, Hebron, Nebraska, 1935, appendectomy."

Question "6. Have you ever had or been treated for: "b. syphilis, cancer, goitre, diabetes," (Ans.) "No." "f. Ulcer of stomach or duodenum, appendicitis, disease of liver or gall bladder, amebic dysentery, rectal disease." (Ans.) "Yes, appendicitis, one attack in 1935, 9 days duration, appendectomy. Attending Physician—Dr. McFarland, Hebron, Nebraska."

Question "7. Name all causes not covered in question 6 for which you have consulted a physician or practitioner within the past 10 years: (If none so state.)" (Ans.) "Indigestion, one attack in 1941, 2 days duration, remaining effects none, Physician's or Practitioner's name and address—Army Doctor, Fort Logan."

Question "8. Are you now in good health, as far as you know and believe?" (Ans.) "Yes."

Question "9. Has any medical examiner or physician formally or informally, expressed an unfavorable opinion as to your insurability or health?" (Ans.) "No."

Question "12. Have you now, or have you ever had,

any other diseases or any injury not mentioned above? (Details)" (Ans.) "Tip, 1. Thumb off, 1938."

"I hereby certify that the foregoing statements and answers * * * are correctly recorded, complete and true, and understand and agree that they shall form the basis for any insurance issued on this application.

"Dated at Englewood, Colo., this 2d day of May, 1949.

(s) Orville H. Thurnau

Signature of Person Examined."

The evidence is undisputed that at the very time of making the application for insurance, resulting in the contract involved in this action, and for some months prior thereto, insured had been almost constantly under a doctor's care; that this information was not disclosed by applicant in answer to the questions in the application; that in 1943 he had been a patient for several days in a hospital in Fort Logan on account of intestinal disorder, which he also failed to mention in answer to any of said questions. Beginning about October 30, 1948, and continuing intermittently through November and December of that year and January of 1949, insured had consulted and been a patient of one Dr. Johnson, a chiropractor, who treated him for stomach and gastrointestinal disorder. Dr. Johnson, following a series of X-rays, diagnosed his trouble as due to duodenal ulcer, of which he informed the insured, prescribing a restricted diet and drugless therapy. February 1, 1949, insured consulted a Dr. Nuttall, complaining of severe abdominal pain. February 5th, following Dr. Nuttall's direction, X-rays were taken by one Dr. Newcomer, and Dr. Nuttall then diagnosed his condition as chronic constipation or atomy of the large bowel, meaning a lack of tone and an inability of the bowel to perform its normal function. At the time the insurance application was taken, signed and certified by insured he was a patient of one Dr. McGill, whom he first consulted February 17, 1949. Between October, 1948, and May 2, 1949, insured had been a regular patient of some doctor,

and had called upon these various doctors at least twenty-five times, none of which he disclosed in answering any question in the application. Following the delivery of the policy and on May 17, 1949, Dr. McGill, without advising insured of his finding, diagnosed his condition as cancer of the colon and caused him to be sent to the Veterans' Hospital at Fort Logan, where he died February 25, 1950. Insured had not been told by any doctor prior to May 2, 1949, that he had cancer.

Throughout the trial the judge of the trial court apparently entertained the view that since the death resulted from cancer of the colon, of which insured was not aware at the time of making application for insurance, liability under the policy could not be avoided because of something of which the insured did not know at the time of making the application. The question then arises, whether, regardless of that fact, the failure of insured to properly answer the medical questions in Part II of the application constituted such misrepresentation of fact that liability under the policy may justifiably be disclaimed. If answered affirmatively, then, under the evidence as submitted, there was no jury issue.

In numerous cases it is held that it is the duty of an insured, in answer to the questions in an application, to fully disclose all material information concerning his physical condition, known to him, and particularly whether he has been hospitalized for any cause, or has called upon physicians or practitioners for medical treatment within the period of time specified in the application.

"A false statement or declaration of a fact material to the risk, and upon which the policy is based, will avoid the policy, whether that misrepresentation be the result of intent or of mistake, and whether made in good faith or not so made. * * * [citing authorities] The foregoing authorities, including the decisions of the highest courts of this state, we regard as conclusive on the proposition that if representations made in answer to specific ques-

tions material to the risk are untrue, the policy will thereby be rendered void, and that it is immaterial whether such answers be considered warranties or representations, or whether they were made with intention to deceive the insurer or without such intention." *Germania Life Insurance Co. v. Klein,* 25 Colo. App. 326, 331, 137 Pac. 73.

In the Klein case, from which we have quoted, the question of age and the names of physicians consulted were the material issues, and with respect thereto the Court of Appeals said: "The representations as to her age and consultation of physicians were of matters presumably within the personal knowledge of the applicant (the first approximately), and were so grossly false that, whether attributed to ignorance so dense as to be almost incredible, or to an intention and design to deceive and defraud, being material, they constituted fraud in law. The first misrepresentation, by the terms of the contract, defeated the policy *pro tanto,* the other in its entirety."

In the case of *North American Life Insurance Co. v. Korrey,* 113 Colo. 359, 157 P. (2d) 149, the author of the opinion, in referring to the case of *Germania Life Insurance Co. v. Klein, supra,* said: "The foregoing decision has been accepted generally as stating the law on this subject in Colorado. See, Cooley's Briefs on Insurance, vol. 4 (2d ed.), p. 3375, and annotation 131 A.L.R. 617, at 618, 621, and 627. Thereunder, it is to be observed that the circumstance that an applicant for a policy of insurance may have been ignorant or unappreciative of the nature of the disease from which he was suffering when he consulted a physician, and may have assumed that the same was not material to the risk or of no consequence, does not protect him or render the representation that he did not consult a physician immaterial, when there was in fact a consultation, the disclosure of which was material to the risk. See, 131 A.L.R. 621, citing *Germania Life Ins. Co. v. Klein, supra,* and authorities from other jurisdictions."

■ In the case at bar it is contended that in so far as the insured knew, at the time he made his application, he was not suffering from the thing which eventually caused his death, or from any other material disability, and hence made no willful misrepresentation. Under the two Colorado cases cited it is clear that it is immaterial whether insured regarded visitations to doctors of consequence. It was his duty in making proper answer to the questions to state the facts, and his failure to do so makes the policy voidable. In many cases from other jurisdictions it is so held. In *Lewis v. New York Life Insurance Co.*, 201 Mo. App. 48, 209 S.W. 625, wherein the factual situation was almost exactly as presented in the present case, the court had this to say: "These were matters about which the Company was entitled to have full and frank answers, since the information sought to be elicited lay peculiarly within the applicant's own knowledge and was information important for the Company to have in determining whether it would choose to enter into a contract insuring applicant's life."

*Anderson v. Aetna Life Insurance Co.*, 265 N.Y. 376, 193 N.E. 181, and *Geer v. Union Mutual Insurance Co.*, 273 N.Y. 261, 7 N.E. (2d) 125, are authority for the proposition that it is incumbent upon the applicant to disclose all information concerning consultation of physicians, regardless of whether deemed important by him; that it is for the insurance company to decide, upon the history revealed, whether it desires to accept the applicant as an insurance risk and to accurately enable it to exercise its choice between acceptance and rejection.

In *Bellestri-Fontana v. New York Life Insurance Co.*, 234 Mich. 424, 208 N.W. 427, wherein the judgment of the trial court was reversed for failure to direct a verdict on undisputed evidence, we find the following language: "Whether the applicant for the insurance was aware of his stomach trouble or not was of small moment at the trial, for the evidence is conclusive that he did know he had consulted a physician about three months before

and that an X-ray had been taken, and yet he represented he had not consulted a physician within five years. He concealed a material fact by a false representation. The insurer had a right to know that he had consulted a physician, the application called for such knowledge, and if it had been imparted the insurer could have made investigation."

*Lawien v. Metropolitan Life Insurance* Co., 211 Minn. 211, 300 N.W. 823, and *John Hancock Mutual Life Insurance Co. v. Conway* (Kentucky), 240 S.W. (2d) 644, are further authorities for the proposition that it is for the insurer to determine the materiality or importance of the answers to such questions rather than for the applicant, and regardless of the fact that he may consider them of no consequence. Other cases to the same effect could be cited.

In the present case an effort was made to justify the fact that the applicant did not fully and correctly answer the questions in the medical part of the application because of a statement by the medical examiner to the effect that he need not mention little inconsequential illnesses, and it is contended that this creates a waiver on the part of the company to now claim avoidance of the policy because of misrepresentations. For various reasons this contention cannot be sustained; one being that it is the law that, it is not for the determination of the applicant, but for the officers of the insurer whether these answers are material. See cases cited, supra. Second, the contract itself contains a proviso that the application and the policy together constitute the whole contract which may not be modified except in writing. Third, since it is admitted that all of applicant's answers were accurately recorded by the medical examiner, it is clearly apparent that the failure of applicant to disclose the recent number of visitations to various physicians certainly cannot be considered anything other than by deliberate design. In view of the fact that he was suffering from abdominal pain at the time he consulted

these physicians and that shortly thereafter was hospitalized because of cancer of the colon, the history manifestly was material. Certainly insured knew that at the time he consulted these physicians he was in distress and subjected to abdominal pain, and it is inconceivable that his failure to disclose these facts on his insurance application could have been other than intentional misrepresentations.

Defendant offered to return to plaintiff a sum equal to the premiums paid on the policy together with interest thereon. This is the extent of its liability. Further than return of the premiums defendant cannot be held liable, and it clearly should have had a verdict directed in its favor upon trial of the action. It now is entitled to have the cause reversed and remanded with instructions that the trial court vacate the judgment heretofore entered and in lieu thereof enter judgment of dismissal. It is so ordered.