501 P.2d 756 (1972)
Lodrita L. GOMOGDA, Plaintiff-Appellant,
v.
PRUDENTIAL INSURANCE CO. OF AMERICA, Defendant-Appellee.
No. 71-208.
Colorado Court of Appeals, Div. I.
July 5, 1972.
Rehearing Denied August 15, 1972.
Certiorari Denied October 24, 1972.
Modesitt & Shaw, Richard H. Shaw, Garrett, Johnson, O'Hara & Ward, Peter L. Garrett, Denver, for plaintiff-appellant.
Phelps, Hall & Keller, Glen E. Keller, Jr., Denver, for defendant-appellee.
Selected for Official Publication.
SMITH, Judge.
Fred L. Gomogda died as a result of head injuries suffered in an automobile accident. Some seven months prior to the accident, his life had been insured by a policy issued by defendant, Prudential Insurance Company of America. Prudential refused to pay on the policy because of certain alleged false and incomplete answers given on the insurance application. Seeking payment as beneficiary of the proceeds of her husband's policy, Lodrita Gomogda filed this suit against Prudential. The trial court, concluding that the insurer could avoid the policy as certain answers on the application were false and material to the insurer's risk, dismissed the action. We reverse.
The issue presented on appeal is whether an insurer may avoid a life insurance policy if the policy application contains material misrepresentations even though there is no showing that the misrepresentations were made with an intent to deceive.
Attached to the policy and made a part thereof was a printed form containing questions, a part of which follows:
"5. Have you ever been treated by any physician or other practitioner for or had any indication of:
a. heart trouble or murmur, chest pain, high blood pressure or abnormal pulse?
. . . . . .
c. epilepsy, convulsion, dizzy spells, or loss of consciousness?"
The deceased answered the quoted questions in the negative.
The trial court found that the answers were false as to chest pain, high blood pressure and dizzy spells, and were true as to the other ailments. But it also found that the insured was not aware that he *757 had high blood pressure, "and therefore the court does not make any finding that his answer in that respect was false."
Elsewhere in his application, the insured disclosed that he had had an ulcer and gave full details as to the treatment therefor as well as listing other ailments, including names and addresses of all his doctors and of all the hospitals where he had been treated. From this information, it is clear that the insurer, at any time, could have ascertained the information it now claims would have caused it to deny insurance to the deceased. In fact, the insurer did raise the premium payments for the policy because of the deceased's disclosure concerning the duodenal ulcer.
After the insured died, the insurer contacted the doctors listed on the application, and it was their testimony as to certain incidents involving the insured which caused the insurer to attempt to avoid the policy.
One doctor testified that the insured came to him complaining of a chest pain. The ultimate diagnosis of this symptom was the duodenal ulcer listed in the application by the insured and for which the insured was successfully treated after having been advised that the ulcer was the cause of his pain.
Another doctor testified that on one occasion the insured had complained to him of dizziness which the doctor found to be caused by high blood pressure. The doctor gave the insured temporary medication which remedied the problem, which did not reoccur. The doctor further testified that he did not believe he told the insured the nature of his ailment. Thus, there is evidence to support the court's finding that the insured's answers denying the existence of chest pain and dizzy spells were false.
The trial court also found "that no intentional fraud was committed by the applicant in connection with the application. . .." This finding is supported by evidence which established that the insured intended in good faith to fully and completely answer all the questions on the application.
Plaintiff argues that this case should be decided in accord with Olinger Mutual Benefit Association v. Christy, 139 Colo. 425, 342 P.2d 1000. Defendant attempts to distinguish Christy and cites Germania Life Insurance Co. v. Klein, 25 Colo.App. 326, 137 P. 73, and cases following its rule.
The Germania case, decided in 1913, involved an insured who understated her age by 13 years and stated that she had never consulted a physician. The evidence in that case was conclusive that these statements were manifestly untrue and that the insured was well aware of that fact. The court did not determine whether the statements in the application were representations or warranties, but concluded that a
"false statement or declaration of a fact material to the risk, and upon which the policy is based, will avoid the policy, whether that misrepresentation be the result of intention or of mistake, and whether made in good faith or not so made."
In Germania, the court limited the applicability of this rule to "matters . . . which are with the knowledge of the applicant." However, in the several cases which have adopted the Germania rule, it has not been necessary to quote this last portion of the rule relating to knowledge of the applicant. Benson v. Bankers Life and Casualty Co., 147 Colo. 175, 362 P.2d 1039; Safeco Insurance Co. of America v. Gonacha, 142 Colo. 170, 350 P.2d 189; Drake v. State Farm Mutual Automobile Insurance Co., 142 Colo. 244, 350 P.2d 566; Capitol Life Insurance Co. v. Thurnau, 130 Colo. 345, 275 P.2d 940; North American Life Insurance Co. of Chicago v. Korrey, 113 Colo. 359, 157 P.2d 149; Security Benefit Association v. Talley, 78 Colo. 358, 241 P. 721; Fallis v. Zurich Insurance Co., 28 Colo.App. 235, 472 P.2d 174. A careful analysis of each of these cases discloses that in each instance the applicant had sufficient knowledge of the matters concerning which he made statements, warranties *758 or representations to render the same knowingly false, inaccurate, or misleading. Thus, fraud or deceit having been apparent in each case, the rationale behind citing Germania was only as support for the proposition that, "false statement or declaration of a fact material to the risk . . . will avoid the policy . . .."
When faced with factual situations in which an applicant had made a full and complete good faith disclosure of all facts within his knowledge, our Supreme Court has declined to apply the Germania rule, and, on the ground that there was insufficient evidence of fraudulent misrepresentation, it has upheld the insurance policies notwithstanding the fact that there had been material false statements or representations. Olinger Mutual Benefit Association v. Christy, 139 Colo. 425, 342 P.2d 1000; New York Life Insurance Co. v. Fukushima, 74 Colo. 236, 220 P. 994; Supreme Tribe of Ben-Hur v. York, 70 Colo. 175, 197 P. 1012. Although the Germania rule with its requirement of knowledge on the part of the applicant was not cited in these cases, it would appear that had the rule of Germania, in toto, been applied, the result would have been the same in each instance.
All of the above cited cases when read in light of the Germania decision, lead to the conclusion that, in Colorado, an insurance policy cannot be avoided on the basis of false statements or declarations of an applicant, unless such statements or declarations are material to the risk or form the basis on which the policy is issued, and unless they are made with knowledge on the part of the applicant of matters which make them false or misleading. Thus, the test is one of fraud or deceit. These requirements are essentially the same as those which our Supreme Court delineated in Morrrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458:
"The constituents of fraud, though manifesting themselves in a multitude of forms, are so well recognized that they may be said to be elementary. They consist of the following: (1) A false representation of a material existing fact, or a representation as to a material existing fact made with a reckless disregard of its truth or falsity; or a concealment of a material existing fact, that in equity and good conscience should be disclosed. (2) Knowledge on the part of the one making the representation that it is false; or utter indifference to its truth or falsity; or knowledge that he is concealing a material fact that in equity and good conscience he should disclose. (3) Ignorance on the part of the one to whom representations are made or from whom such fact is concealed, or the falsity of the representation or of the existence of the fact concealed. (4) The representation or concealment made or practiced with the intention that it shall be acted upon. (5) Action on the representation or concealment resulting in damage."
In the present case, the trial court found that some of the answers to the questions in the application were false, but the trial court also found that no fraud was committed by the applicant in connection with these answers. These findings are supported by the evidence and will not be disturbed on review. Adler v. Adler, 167 Colo. 145, 445 P.2d 906. In order to avoid the policy, it was incumbent upon the defendant to prove not only that the answers in the application were false and material, but in addition that the applicant intended to deceive the insurer.
We uphold the trial court's findings that the statements were material and false, and the finding that there was no intent to deceive on the part of the applicant.
However, based upon these findings, the court's conclusion that the insurer could avoid the policy is erroneous.
Judgment reversed with directions to enter judgment for plaintiff.
SILVERSTEIN, C. J., and DWYER, J., concur.