**No. C-793**

**Sherry B. Hollinger, now by marriage, Sherry Govett v. The Mutual Benefit Life Insurance Company, a New Jersey corporation**

(560 P.2d 824)

Decided January 31, 1977. Opinion modified and as modified rehearing denied March 14, 1977.

Cole, Hecox, Tolley, Edwards & Hero, Lawrence A. Hecox, for petitioner.

Asher, Kraemer, Kendall & Felt, Sandy F. Kraemer, James G. Felt, for respondent.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *Hollinger v. Mutual Benefit Life Insurance Co.,* 36 Colo. App. 306, 541 P.2d 128 (1975).

Petitioner, Sherry Hollinger, beneficiary of a life insurance policy issued to her deceased husband, seeks reversal of a decision of the court of appeals which affirmed the trial court's entry of a judgment in favor of Mutual notwithstanding the verdict. We affirm.

Beginning in 1971, the decedent, a military academy graduate, was employed by the respondent insurance company as a life insurance salesman trainee. The subject policy was purchased in connection with this employment on November 10, 1971. The application for insurance included inquiries as to any medical or psychiatric consultations or treatments within the past seven years.[1] The form required the applicant to provide

---

[1] "4. For what have you consulted, or been attended by, a physician, surgeon, psychiatrist, or other practitioner during the past 7 years?

. . . .

"15. Have you ever had or been told that you had or received treatment for

. . . .

"e) frequent headaches, paralysis, dizzy spells, loss of consciousness, epilepsy, nervous breakdown, or mental disorder?"

detailed information for any consultation or treatment listed. In his response to the questions, the decedent stated that he had been treated for influenza, and he denied any treatment for mental disorders. The answers to the questions were filled in on the application by the respondent's examining physician on the basis of a medical history obtained from the decedent. In signing the application, the decedent represented that he had made full disclosure concerning the questions in the application.[2]

In fact, a psychiatrist testified that he had been consulted on 11 occasions by the decedent during the summer immediately preceding the decedent's purchase of the policy. He had first been consulted after an apparent suicide attempt and had finally advised the decedent that he was suffering from "anxiety depression."[3]

Mutual's examining physician testified that while information relating to marital and job problems might not always be included in application responses, information concerning psychiatric consultations was never omitted. Respondent's medical director testified that if the decedent's application had indicated any psychiatric consultation or treatment[4] the policy would not have been issued without further inquiry. Moreover, he stated that if the information revealed by the psychiatrist's testimony had been available to Mutual, the policy would not have been issued.

Mutual's motion for a directed verdict, asserting that the evidence clearly established fraud by the decedent in answering application questions, was denied. Following the denial of Mutual's motion, the trial court instructed the jury that in order to establish the affirmative defense of fraud, Mutual had to establish that Mr. Hollinger had knowingly made a false statement of a material fact, that the insurer was ignorant of the falsity, and that the insurer suffered damage from acting upon the false statement. In addition, the trial court instructed the jury as follows:
"That the representation or concealment was done with the intention that it be acted upon, that is to say *that the applicant intended to deceive the insurer.*" (Emphasis added.)
This instruction was in substantial conformity with leading Colorado insurance law cases relating to the affirmative defense of fraud,[5] with the exception of the emphasized phrase of the quoted portion of the instruction, that the applicant "intended to deceive" the insurer, which was added by the trial court. The jury returned a verdict for the plaintiff.

[2] "The undersigned represents that the foregoing statements are true and complete, and that every occasion and instance as to each item answered 'yes' has been disclosed."
[3] Decedent's last consultation occurred less than four months before he signed the application for life insurance, and the last payment for treatment was by personal check approximately 34 days before the application.
[4] *See* note 1 *supra.*
[5] *Capitol Life Insurance Co. v. Thurnau,* 130 Colo. 345, 275 P.2d 940 (1954); *North American Life Insurance Co. v. Korrey,* 113 Colo. 359, 157 P.2d 149 (1945); *Germania Life Insurance Co. v. Klein,* 25 Colo.App. 326, 137 P.73 (1913) and authorities cited therein.

In granting Mutual's motion for judgment n.o.v., the trial court recognized the error in the quoted portion of the instruction and concluded that it was not necessary for Mutual to establish a separate "intent to deceive" element. The court also determined that on the facts of this case the other elements of fraud were established as a matter of law, in particular that decedent's misrepresentation was knowingly false.

Whether decedent's misrepresentation was knowingly false would ordinarily be a jury question. Under the record in this case, however, the trial court was correct in holding that the failure to disclose constituted a knowing misrepresentation as a matter of law.

Petitioner argues that Colorado case law in the area of life insurance fraud is inconsistent on the question of whether an intent to deceive by the applicant must be shown by the insurer in order to avoid the policy when the applicant knowingly makes a false statement which is material to the risk.

Petitioner further argues that the appropriate rule should require the insurer to establish not only that the applicant knowingly made a false statement which was in fact material to the risk, but also that he did so with an "intent to deceive" the insurer. Petitioner views an intent to deceive as requiring knowledge on the part of the applicant that the nondisclosure or misstatement be of a material fact.

■ This court has consistently held that the question of materiality does not depend upon the opinion or upon the actual or subjective knowledge of the applicant. In *Germania Life Insurance Co. v. Klein, supra*, the applicant consulted a physician on several occasions but was not advised of the gravity of her condition. In her application for insurance, she stated that she had never consulted a physician. The court held that "the fact of the consultation of a physician or its materiality does not depend upon the gravity of the subject of the interview as regarded by the patient." This proposition was reaffirmed in *North American Life Insurance Co. of Chicago v. Korrey, supra*, and *Capitol Life Insurance Co. v. Thurnau, supra*.

■ We have reviewed the cases cited by petitioner[6] and agree that the statements in those cases concerning the applicant's mental state at the

---

[6] *Jacobs v. Prudential Insurance Co.*, 35 Colo. App. 423, 533 P.2d 516 (1975); *Gomogda v. Prudential Life Insurance Co.*, 31 Colo. App. 154, 501 P.2d 756 (1972); *Olinger Mutual Benefit Ass'n v. Christy*, 139 Colo. 425, 342 P.2d 1000 (1959); *Capitol Life Insurance Co. v. Thurnau, supra; North American Life Insurance Co. of Chicago v. Korrey, supra; Security Benefit Ass'n v. Talley*, 78 Colo. 358, 241 P. 721 (1925); *New York Life Insurance Co. v. Fukushima*, 74 Colo. 236, 220 P. 994 (1923); *Supreme Tribe of Ben Hur v. York*, 70 Colo. 175, 197 P. 1012 (1921); *Northwestern Mutual Life Insurance Co. v. Farnsworth*, 60 Colo. 324, 153 P. 699 (1945); and *Germania Life Insurance Co. v. Klein, supra*.

time of making the application cannot be wholly reconciled. However, a review of the facts in those cases leads us to conclude that where the evidence shows that the applicant has knowingly made false statements material to the risk undertaken by the insurer, the insurance policy can be avoided without establishing a separate element of an "intent to deceive." We therefore disapprove the language of those Colorado cases to the extent that they are inconsistent with the holding herein.

Stated in a different formulation, we hold that in order to avoid a life insurance policy on the basis of misrepresentations in the application, the insurer must prove that (1) the applicant made a false statement of fact or concealed a fact in his application for insurance; (2) the applicant knowingly made the false statement or knowingly concealed the fact; (3) the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by the insurer;[7] (4) the insurer was ignorant of the false statement of fact or concealment of fact and is not chargeable with knowlege of the fact; (5) the insurer relied, to its detriment, on the false statement of fact or concealment of fact in issuing the policy.

The judgment of the court of appeals is affirmed.

MR. CHIEF JUSTICE PRINGLE dissents.

MR. JUSTICE CARRIGAN concurs in the result.

MR. JUSTICE ERICKSON specially concurs.

MR. JUSTICE ERICKSON specially concurring:

The analysis set forth in the majority opinion and the result reached are basically sound, but there is one issue which requires clarification.

The majority opinion states that:

"This court has consistently held that the question of *materiality* does not depend upon the opinion or subjective knowledge of the applicant." (Emphasis added.)

I agree. However, the distinction which is necessary is that between *materiality* [that which affects the insurer's risk] and *what a question means* to a lay applicant. Materiality is to be judged by the insurer; however, the insurer is not at liberty to deny coverage, after a loss has occurred, on the basis of an answer to an insurer's question that is ambiguous or too general to evoke a material response. For example, a question that calls for the applicant to state whether he has suffered from a number of enumerated maladies, followed by the general catch-all phrase, "or other disease or ailment or surgical operation," is overly broad. It is so broad as to deny an applicant the opportunity, as a reasonable person, to determine the scope of the question.

---

[7] The source of element (3) is section 10-8-111(3), C.R.S. 1973.

We applied this distinction in the companion case, *Wade v. Olinger Life Insurance Co.*, 192 Colo. 401, 560 P.2d 446. There, we formulated a rule whereby an applicant's response to an ambiguous or overly broad question was to be measured by an objective standard: whether a reasonable person, with the applicant's physical or mental characteristics, under all the circumstances, would understand that the question calls for disclosure of specific information. The prophylactic rule announced in the *Wade* case is consistent with the opinion in this case.

I have been authorized to say that MR. JUSTICE HODGES, MR. JUSTICE GROVES, MR. JUSTICE LEE, and MR. JUSTICE CARRIGAN join me in this special concurrence.

MR. CHIEF JUSTICE PRINGLE dissenting:

I most respectfully dissent. In my view, the proper standard by which to determine whether the misrepresentation or the concealment should void the policy is whether the said misrepresentation or concealment is material to the cause of the loss for which the claim is made. For instance, if the misrepresentation were that the insured did not have high blood pressure but the claim resulted from a death by reason of being struck by lightning, I would not permit the insurer to void the policy.