**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 22, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ERIN PETERSON,

      Plaintiff - Appellant,

v.

USAA LIFE INSURANCE
COMPANY,

      Defendant - Appellee.

No. 18-1447
(D.C. No. 1:17-CV-01514-CMA-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **HOLMES**, and **EID**, Circuit Judges.

---

      This case comes to us from Plaintiff-Appellant Erin Peterson's appeal from

the district court's grant of summary judgment to Defendant-Appellee USAA Life

Insurance Company ("USAA"). The district court granted USAA's motion for

summary judgment on the ground that Ms. Peterson's late husband had knowingly

---

     [*]     This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and 10th Circuit Rule 32.1.

misrepresented material facts in his application for term life insurance. Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's judgment.

**I**

In August 2015, Theodore Bobkowski applied for a $1 million, twenty-year term life insurance policy from USAA. Aplt.'s App., Vol. I, at 188–92 (USAA Term Life Insurance Appl., dated Aug. 23, 2015). The application required him to answer questions about his medical history. Question 5(b) asked, "Has [the] Insured ever consulted with a health care provider for: . . . asthma, emphysema, pneumonia or other respiratory system disorder?" *Id.* at 196 (USAA Examiner's Report, filed May 11, 2018). Question 12 asked, "Has [the] Insured consulted a health care provider for any reason not previously disclosed?" *Id.* Mr. Bobkowski answered both questions in the negative, and he certified that his answers were "true and complete and correctly recorded." *Id.* at 197.

USAA approved the application and provided Mr. Bobkowski with a policy in its favored "Preferred Ultra Premium" risk class that listed Mr. Bobkowski's wife, Ms. Peterson, as the beneficiary.[2] *Id.* at 166 (USAA Level Term Life Ins.,

---

[2]      Ms. Peterson qualifies for membership in USAA because she is a retired U.S. Air Force Lieutenant Colonel. Her deceased husband was also an honorably discharged Air Force officer. Aplt.'s App., Vol. I, at 22 (Pl.'s Compl., filed May 18, 2017).

dated Sept. 21, 2015); *id.* at 190 (listing Ms. Peterson as beneficiary). Less than two years later, Mr. Bobkowski died tragically. Ms. Peterson then submitted a claim for benefits to USAA, which conducted an investigation pursuant to Colorado's two-year contestability period. Among other things, USAA discovered the following: that Mr. Bobkowski had been diagnosed with Obstructive Sleep Apnea ("OSA"); that he had used a continuous-positive-airway-pressure ("CPAP") machine to aid his breathing; and that he had received other OSA-related medical treatments. *Id.* at 236–37 (USAA Denial of Benefits Letter, dated Jan. 10, 2017).

USAA denied Ms. Peterson's claim on the ground that Mr. Bobkowski had misrepresented material aspects of his medical history in the application. USAA specifically noted that Mr. Bobkowski had omitted material facts regarding his medical history when answering Questions 5(b) and 12. And, according to USAA's underwriting guidelines, an applicant disclosing medical conditions like Mr. Bobkowski's would *not* have qualified for the policy at issue, nor for any other policy within USAA's Preferred Ultra Premium risk class.

Ms. Peterson sued USAA in Colorado state court for breach of contract, bad-faith breach of contract, and violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101 to -1-1214. Aplt.'s App., Vol. I, at 21–26. USAA removed the action to federal district court and moved for

3

summary judgment. *Id.* at 27–48 (Def.'s Mot. Summ. J., filed May 11, 2018). USAA argued that it had properly denied Ms. Peterson's claim because Mr. Bobkowski had knowingly failed to disclose his OSA and OSA-related treatments in answering Questions 5(b) and 12.

The district court granted USAA's motion, holding that Mr. Bobkowski had "knowingly concealed facts about his OSA diagnosis in his life insurance application." *Id.*, Vol. IV, at 912 (Order Granting Def.'s Mot. Summ. J., filed Oct. 26, 2018). The court entered judgment against Ms. Peterson on all of her claims, and she now timely appeals.

## II

"We review de novo a district court's grant of summary judgment, applying the same legal standard as applies in the district court." *Emcasco Ins. Co. v. CE Design, Ltd.*, 784 F.3d 1371, 1378 (10th Cir. 2015). "[W]e also review *de novo* the District Court's interpretation of the substantive state law." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1108 (10th Cir. 2009) (alteration in original) (quoting *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We evaluate the evidence in the light most favorable to the nonmovant. *See, e.g.*, *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246

4

(10th Cir. 2000) ("[W]e view the factual record and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party."); *accord Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1167 n.2 (10th Cir. 2006).

## A

Both parties acknowledge that the five-part test laid out in *Hollinger v. Mutual Benefit Life Insurance Co.*, 560 P.2d 824 (Colo. 1977) governs contract recisions for a material misrepresentation in an insurance application. Under Colorado law, which is controlling here, to rescind a life insurance policy based on a material misrepresentation in the application, an insurer must prove the following:

> (1) the applicant made a false statement of fact or concealed a fact in his application for insurance; (2) the applicant knowingly made the false statement or knowingly concealed the fact; (3) the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by the insurer; (4) the insurer was ignorant of the false statement of fact or concealment of fact and is not chargeable with knowledge of the fact; [and] (5) the insurer relied, to its detriment, on the false statement of fact or concealment of fact in issuing the policy.

*Hollinger*, 560 P.2d at 827 (internal footnote omitted).

Here, the district court determined that the summary-judgment record had established as a matter of law that Mr. Bobkowski had knowingly concealed material facts about his OSA condition in answering medical-history questions on

5

USAA's insurance application. The parties' dispute before the district court centered on whether Mr. Bobkowski's responses to Questions 5(b) and 12 had contained material misrepresentations.[3]

On appeal, Ms. Peterson argues that Question 5(b) is ambiguous and, therefore, the district court erred in determining that USAA proved that Mr. Bobkowski had knowingly concealed his OSA-related medical history.[4] She

---

[3] The district court expressly focused its analysis on Mr. Bobkowski's response to Question 5(b). But the court also determined that Mr. Bobkowski "was required to disclose his OSA related consultations with health care providers—if for no other reason—because he had not previously disclosed those consultations in the application," and, by failing to do so, he "made false statements of fact regarding pertinent medical history." Aplt.'s App., Vol. IV, at 910. That determination implicated Question 12, which asked, "Has [the] Insured consulted a health care provider for any reason not previously disclosed?" *Id.*, Vol. I, at 196.

[4] As Ms. Peterson points out, USAA does not defend the district court's judgment on the ground that Mr. Bobkowski's response to Question 12 also involved a knowing misrepresentation, even though it took that position before the district court. *See* Aplt.'s Reply Br. at 10 n.5. Not surprisingly then, Ms. Peterson takes the position that "USAA has abandoned any argument it may have been able to advance respecting Bobkowski's response to question 12." *Id.*; *see* Oral Arg. at 15:10–15:30 (Ms. Peterson's counsel stating that the "only argument" at issue on appeal relates to Question 5(b)). Though we may affirm on any ground supported by the record, *see Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) ("We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal."), we exercise our discretion not to inquire into whether Mr. Bobkowski knowingly made misrepresentations or concealed material information in connection with Question 12. This is so because our decision concerning Question 5(b), explicated *infra*, fully resolves this appeal—as only one knowing misrepresentation or concealment is sufficient to negate Ms. Peterson's coverage.

6

offers a related challenge to the district court's reasoning as to this question, arguing that the court relied on inadmissible evidence that USAA had presented in its motion for summary judgment. We consider these arguments in turn.

**1**

Ms. Peterson contends that Question 5(b) of the USAA application was ambiguous. An insured is *not* responsible for misrepresentations made in response to an *ambiguous* insurance policy question. *See Wade v. Olinger Life Ins. Co.*, 560 P.2d 446, 452 (Colo. 1977); *see also Hollinger*, 560 P.2d at 827 (Erickson, J., concurring) ("[T]he insurer is not at liberty to deny coverage, after a loss has occurred, on the basis of an answer to an insurer's question that is ambiguous or too general to evoke a material response.").

Here, however, the district court properly determined that Question 5(b) is not ambiguous. Again, Question 5(b) asks whether applicants "[had] ever consulted with a health care provider for: . . . asthma, emphysema, pneumonia or other respiratory system disorder?" Aplt.'s App., Vol. I, at 196. As the district court explained, "The word 'respiratory' is defined as '[d]esignating, relating to, or affecting the organs involved in respiration; of or relating . . . to the process of oxygen transport and respiration." *Id.*, Vol. IV, at 912 (alterations in original) (quoting *Respiratory*, OXFORD ENGLISH DICTIONARY, https://www.oed.com (last visited Oct. 10, 2018)). The court reasoned that it would have been clear to Mr.

Bobkowski from Question 5(b)'s reference to a "respiratory system disorder" that the question contemplated his OSA—in that the condition is treated with a CPAP machine that forces air into the lungs, and it "involves the process of oxygen transport and respiration." *Id.* As the court put it, "OSA is fairly characterized as a respiratory disorder because it pertains to a defect in the process of respiration." *Id.*

We conclude that the district court properly concluded that Question 5(b) was not ambiguous as to whether it encompassed Mr. Bobkowski's OSA. As the district court properly explained, a reasonable person with OSA would have known to answer Question 5(b) in the affirmative. *See, e.g.*, *W. Coast Life Ins. Co. v. Hoar*, 558 F.3d 1151, 1153, 1158 (10th Cir. 2009) (applying *Hollinger* and holding that "a reasonable person in [the insured's] position would understand Question 5 call[ed] for an applicant to report heli-skiing," where the question asked whether the insured "[e]ngaged in auto, motorcycle or boat racing, parachuting, skin or scuba diving, skydiving, or hang gliding or other hazardous avocation or hobby" (last alteration in original)). Therefore, we reject Ms. Peterson's first challenge.

**2**

Relatedly, Ms. Peterson argues that the district court considered inadmissible evidence in applying the second *Hollinger* factor. She argues that

USAA improperly "attached a 547-page compendium of materials, the vast majority of which were irrelevant [and] highly inflammatory." Aplt.'s Opening Br. at 6. USAA attached, Ms. Peterson specifically notes, the following materials to its motion for summary judgment:

- Ninety pages of "Application Screen Shots"

- Mr. Bobkowski's answers to USAA's online quote

- Mr. Bobkowski's medical records.

*Id.* at 6–7. These documents, Ms. Peterson alleges, violate Colo. Rev. Stat. § 10-7-102(1)(c), which provides,"[N]o statement made by the insured shall avoid the policy unless it is contained in a written application and a copy of such application is endorsed upon or attached to the policy when issued."

Colorado courts apply an objective standard when considering whether an applicant knowingly misrepresented a material fact in an insurance-policy application. *See Wade*, 560 P.2d at 452 ("A particular misrepresentation . . . must be such that a [r]easonable person would, under the circumstances, have understood that the question calls for disclosure of specific information."); *Hollinger*, 560 P.3d at 827 (Erickson, J., concurring) ("[A]n applicant's response to an ambiguous or overly broad question [is] to be measured by an objective standard: whether a reasonable person, with the applicant's physical or mental characteristics, under all the circumstances, would understand that the question

9

calls for disclosure of specific information."); *accord Hoar*, 558 F.3d at 1158 ("This court must thus decide whether a reasonable person in [the insured's] position would know heli-skiing constituted a hazardous activity for purposes of the insurance policy."). Thus, the test is whether a reasonable person, under the circumstances, would have known that the application called for such disclosure.

Contrary to Ms. Peterson's contention, we have understood Colorado law to permit a district court to consider evidence outside the application when applying the second *Hollinger* factor. This court's opinion in *Hoar* leaves no doubt on the subject. There, the court applied the *Hollinger* test to consider whether the insurer properly rescinded a policy because of a material misrepresentation within the application. The application question there asked if the insured had "[e]ngaged in auto, motorcycle or boat racing, . . . or other hazardous avocation or hobby." 558 F.3d at 1153 (alteration in original). Despite the applicant's history of heli-skiing, he answered the question in the negative. The court therefore had to determine whether this misrepresentation was done "knowingly" under the second *Hollinger* factor.

In applying *Hollinger*'s second factor, the court in *Hoar* considered evidence extrinsic to the application. This evidence was both specific to the individual and the activity in question. *See id.* at 1158–59. For example, the court considered the insured's history of heli-skiing and the heli-skiing safety

10

training that he had received. *Id.* at 1158. The insured had carried an Avalung

emergency-air supply and even signed a waiver that expressly noted "I am aware

of the risks . . . associated with wilderness skiing." *Id.* at 1155 (capitalization

omitted). After considering this evidence, the court found that the insured had

knowingly misrepresented a material fact on the application. This detailed

analysis that we undertook in *Hoar* shows that, in determining what a reasonable

person would have understood the terms of the insurance application to mean,

courts applying Colorado law may reference materials outside the four corners of

the application.

Furthermore, we agree with USAA that Ms. Peterson's reliance on Colo.

Rev. Stat. § 10-7-102(1)(c) in arguing to the contrary is misguided, and that she

effectively "conflates the first [*Hollinger*] element, which she does not appeal,

with the second." Aplee.'s Resp. Br. at 21. More specifically, the first *Hollinger*

factor ensures that an insurance company will be able to avoid liability on a

policy based on a falsehood only where that falsehood appears in the insurance

application. *See Hollinger*, 560 P.2d at 827. As such, this first factor is

congruent with the mandate of Colo. Rev. Stat. § 10-7-102(1)(c); in particular, an

insurer avoiding liability in part through satisfaction of this first *Hollinger* factor

ordinarily will be acting in compliance with the statute's mandate by focusing on

the information contained in the application.

But section 10-7-102(1)(c) says nothing about the scope of permissible evidence in establishing that the falsehood in the application was *knowingly* made—i.e., the second *Hollinger* factor. And the Colorado authorities that Ms. Peterson cites in protesting this interpretation of the statute are inapposite. *See Murray v. Montgomery Ward Life Ins. Co.*, 584 P.2d 78, 80–81 (Colo. 1978) (affirming judgment in favor of insurer in litigation involving misrepresentation on insurance application and discussing neither section 10-7-102(1)(c) nor an earlier version thereof); *Wade*, 560 P.2d at 449 (where neither section 10-7-102(1)(c) nor an earlier version of the statute was at issue, but rather the court was focused, *inter alia*, on whether "the petitioner possessed the requisite state of mind to allow the insurer to avoid the policy"); *Universal Life & Accident Ins. Co. v. Bopp*, 347 P.2d 783, 784 (Colo. 1959) (noting at the outset that the insurer had "failed to comply" with an earlier iteration of section 10-7-102(1)(c) and that its lack of compliance resulted in the district court declining to review any of the insured's alleged misrepresentations—a ruling that was not under review); *see also* Aplt.'s Reply Br. at 6–8 (citing the foregoing cases). Thus, because Ms. Peterson's challenge here undisputedly relates to the second *Hollinger* factor—not the first—her reliance on section 10-7-102(1)(c) is misplaced.[5]

---

[5] In the alternative, Ms. Peterson makes the following argument: "If USAA is correct that its consideration of evidence extrinsic to the application was

(continued...)

12

In sum, we conclude that the district court correctly considered the evidence that USAA attached to its summary-judgment motion in resolving the second *Hollinger* factor. We reject Ms. Peterson's argument to the contrary.

**B**

Having concluded that USAA's denial of coverage was proper as a matter of law, we determine that Ms. Peterson's related challenge to the dismissal of her bad-faith breach of contract claim also fails.

Under Colorado law, to allege bad-faith breach of an insurance contract, a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness. *See Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997). Bad-faith breach of an insurance contract

---

[5](...continued)
proper, the district court's ruling must nevertheless be reversed because it is clear the court did not apply this rule evenhandedly." Aplt.'s Reply Br. at 9. At bottom, the thrust of this argument is that the district court's summary-judgment ruling allegedly does not reflect the court's consideration of the evidence in the light most favorable to the non-movant, Ms. Peterson. However, we need not separately parse the evidence in order to discern whether there is any merit to this argument. Our review of the summary-judgment record is de novo, and, based on that review, we are satisfied that the district court properly concluded (based on permissible evidence) that USAA established the second *Hollinger* factor—that is to say, that Mr. Bobkowski knowingly concealed material medical-history information on his insurance application. *See, e.g.*, *Rivera v. City & Cty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004) ("Because our review is de novo, we need not separately address Plaintiff's argument that the district court erred by viewing evidence in the light most favorable to the City and by treating disputed issues of fact as undisputed.").

13

encompasses the entire course of conduct and is cumulative. *Id.* The determination as to whether an insurer has breached its duties to an insured in bad faith or willfully and wantonly is one of reasonableness under the circumstances. *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984). In other words, we ask whether "a reasonable insurer under the circumstances [would] have denied or delayed payment of the claim under the facts and circumstances." *Id.* (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wis. 1978)).

Here, Ms. Peterson has not shown that she was improperly denied coverage under the policy. As explained, USAA's denial of coverage was proper as a matter of law. As a result, there is no genuine dispute of material fact as to whether USAA breached its contract in bad faith. *See MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage."). We, therefore, reject Ms. Peterson's bad-faith argument.

## III

Based on the foregoing, we **AFFIRM** the district court's judgment.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

14

No. 18-1447, *Peterson v. USAA Life Insurance Co.*
**BRISCOE**, Circuit Judge, concurring.

I concur in the judgment, but I arrive at this conclusion based upon different reasoning than the majority.

The majority rejects Ms. Peterson's argument "that Question 5(b) is ambiguous and, therefore, the district court erred in determining that USAA proved that Mr. Bobkowski had knowingly concealed his [obstructive sleep apnea (OSA)]-related medical history." O&J at 6. Specifically, the majority concludes, citing only to the Oxford English Dictionary's definition of the term "respiratory," that Mr. Bobkowski should have known that the phrase "respiratory system disorder" "encompassed [his] OSA." *Id.* at 7-8. I find this conclusion less than compelling, given that well-respected and commonly-visited sources of medical information refer to obstructive sleep apnea as a "sleep disorder." *See Obstructive Sleep Apnea*, Mayo Clinic https://www.mayoclinic.org/diseases-conditions/obstructive-sleep-apnea/symptoms-causes/syc-20352090 (last visited May 18, 2020).

Whether or not Question 5(b) is ambiguous on its face, however, I believe that the record contains undisputed evidence that supports the district court's conclusion that USAA was entitled to summary judgment on the issue of whether Bobkowski knowingly concealed his history of OSA when responding to Question 5(b). Bobkowski first learned in November 2012, after undergoing an initial sleep study, that he suffered from moderate OSA. After undergoing a second sleep study, Bobkowski consulted with an ear, nose and throat specialist in October 2013 and was prescribed a CPAP machine to

treat the OSA. From that time until his death, Bobkowski regularly used a CPAP machine.

On August 23, 2015, Bobkowski submitted an online application for a life insurance policy from USAA. Before actually completing the online application, Bobkowski first requested an online quote from USAA online. To request a quote, Bobkowski was required to answer a short series of questions, including the following: "Do you have a history of a medical condition that has required a doctor's care, such as cancer, diabetes, depression, heart disease, chronic breathing disorder, anxiety, post-traumatic stress or sleep apnea?" Aplt. App., Vol. 1 at 33, 69. Bobkowski answered this question in the negative. The answers to the questions impacted Bobkowski's risk classification by USAA and, in turn, the quote he received from USAA. Because he answered "no" to the question, USAA's online system placed Bobkowski in the "Preferred Ultra" risk class. *Id.*, Vol. 2 at 273. Had Bobkowski answered "yes" to the question, the online system would have placed him in the "Preferred" risk class and provided him with a different quote amount. *Id.*, Vol. 1 at 60, 64, 237. USAA's online system notified Bobkowski of this general fact, stating: "Premium shown is based on age, gender, face amount and the health information you have provided." *Id.* at 72.

After receiving the quote from USAA, Bobkowski proceeded to actually apply for a life insurance policy. In doing so, Bobkowski had to answer a series of questions regarding his health and medical history, including Question 5(b), which asked him: "Has any Insured ever consulted with a health care provider for asthma, emphysema,

2

pneumonia or other respiratory system disorder?" *Id.* at 96.  Immediately below Question 5(b) was a hyper-linked statement reading "Explain other respiratory system disorder." *Id.*  Had Bobkowski clicked on that hyper-link, it would have displayed a definition of "Other Respiratory System Disorder" that expressly included "sleep apnea."[1]  Id.  Bobkowski answered Question 5(b) in the negative and later certified that all of his answers in the application were "true, complete and correctly recorded."  Id. at 35.

In my view, the only reasonable inference that can be drawn from this evidence is that Bobkowski knowingly concealed his OSA when answering Question 5(b).  I therefore reach the same result as the Majority and conclude that the district court properly granted summary judgment in favor of USAA on Peterson's breach of contract claim.

---

[1] The definition stated, in full, that the term "Other Respiratory System Disorder" "includes, but isn't limited to, the following: sleep apnea, reactive airways, pulmonary embolism, fibrosis, silicosis, sarcoidosis, black lung or coal miner's lung, cystic fibrosis, asbestosis, asbestos lung, chemical pneumonitis, chronic obstructive pulmonary disease (COPD) or pneumothorax."  Aplt. App, Vol. 1 at 96.